707 So.2d 975 (1998)
STATE of Louisiana
v.
Ulysses JONES.
No. 97-KK-2593.
Supreme Court of Louisiana.
March 4, 1998.
*976 John E. Di Giulio, Baton Rouge, for Applicant.
Richard P. Ieyoub, Atty. Gen., Paul D. Connick, Jr., Dist. Atty., Terry M. Boudreaux, Gretna, for Respondent.
Sigrid K. J. Bonner, New Orleans, Phyllis E. Mann, Alexandria, for Amicus Curiae Louisiana Association Criminal Defense.
G. Paul Marx, Lafayette, Walter M. Sanchez, Lake Charles, Clive Adrian Stafford Smith, New Orleans, for Amicus Curiae Louisiana Public Defense Association, and Louisiana Association of Criminal Defense Lawyers.
TRAYLOR, Justice.[*]
This case comes to us following the involuntary removal of an indigent defendant's privately retained counsel. Because the Sixth Amendment of the United States Constitution and Article 1, § 13 of the Louisiana Constitution guarantee a defendant his right to counsel of choice provided he can afford counsel of his choice, we now reverse.

FACTS AND PROCEDURAL HISTORY
On October 25, 1996, defendant Ulysses Jones was indicted for the first degree murder of a Jefferson Parish Deputy Sheriff. On November 6, 1996, two public defenders from the 24th Judicial District Indigent Defender Board (IDB), Mr. Michael Riehlmann and Ms. Graham Daponte, were appointed to represent the defendant. On December 2, 1997, Attorney John Di Giulio enrolled as counsel for defendant, having been retained by defendant's father. Pursuant to an agreement between IDB and Di Giulio, Daponte withdrew from the case and Riehlmann stayed on as co-counsel. Over the next several months, both Di Giulio and Riehlmann made several appearances and filed numerous motions on behalf of defendant.
On July 25, 1997, the court, over objection, revoked Riehlmann's appointment because the defendant had retained Di Giulio as counsel. The court then set a hearing for August 29, 1997 to determine defendant's indigent status and to reassess the removal of Riehlmann.
At the hearing on August 29, 1997, Di Giulio renewed his objection to Riehlmann's removal, pointing out that two lawyers are preferable in a capital case, one for each phase of the trial. He requested that the court declare defendant indigent and reappoint Riehlmann Di Giulio further argued that because of his indigency defendant would be entitled to funding for any necessary auxiliary services to ensure a fair trial. Di Giulio offered to disclose the nature of his fee arrangement with defendant's father to the court in camera and reassured the court, as he had before, that he would not bill the State for any of his services. Thereupon, the court declared defendant to be indigent and removed Di Giulio from the case, reappointing the IDB to represent defendant, reasoning that if a defendant is indigent, he must be represented by IDB. Defendant objected and sought review from the Court of Appeal, Fifth Circuit.
The Court of Appeal, by two-to-one vote, denied defendant's writ application citing to La. Const. art. I, § 13 and La. R.S. 15:144. Judge Cannella dissented, agreeing with the majority that a defendant does not have a right to have a particular attorney appointed to represent him; however, disagreeing with the holding because Di Giulio was not seeking payment from State funds and the IDB agreed to the arrangement. Therefore, the dissent stated that the trial court lacked the authority to remove Di Giulio.

DISCUSSION

Right to Counsel of Choice
Initially we dispense with the issue of defendant's right to have Di Giulio represent him. While the Court of Appeal correctly noted that an indigent defendant does not have the right to have appointed counsel of choice, a defendant does have the right to counsel of choice so long as defendant can obtain and afford the services of said counsel. La Const. art. I § 13 provides in relevant part: "At each stage of the proceedings, every person is entitled to assistance of counsel *977 of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." The Sixth Amendment to the United States Constitution likewise carries such a guarantee. Although the Sixth Amendment primarily guarantees the right to effective counsel, it also includes the right to select and be represented by counsel of choice. Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 1696, 100 L.Ed.2d 140 (1988); Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932) (stating unequivocally, "[i]t is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.").
Though this Court has not addressed this issue in the instant context, we have discussed a criminal defendant's right to counsel. In State v. Harper, 381 So.2d 468, 470-71 (La.1980), this Court stated:
As a general proposition a person accused in a criminal trial has the right to counsel of his choice. State v. Leggett, 363 So.2d 434 (La.1978); State v. Mackie, 352 So.2d 1297 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). If a defendant is indigent he has the right to court appointed counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Argersinger v. Hamlin, [407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972)]; State v. Adams, 369 So.2d 1327 (La.1979); City of Baton Rouge v. Dees, 363 So.2d 530 (La.1978). An indigent defendant does not have the right to have a particular attorney appointed to represent him. State v. Rideau, 278 So.2d 100 (La.1973). An indigent's right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. State v. Jones, 376 So.2d 125 (La.1979); State v. Leggett, supra; State v. Mackie, supra. (emphasis added).
Here, Di Giulio has been retained by defendant's father at no cost to defendant. Thus, defendant can manage to retain Di Giulio and the Constitutions of the United States and Louisiana preclude his removal. Neither defendant's status as indigent nor statutory guidance regarding appointment of counsel in capital cases can defeat defendant's constitutional right to counsel.

State Funded Auxiliary Services
Defendant next contends that despite the presence of retained counsel, he should still be eligible for State funded auxiliary services based on his indigent status.
Part of the State's obligation in providing effective assistance of counsel to indigent defendants is the obligation to provide the indigent defendant's counsel with the basic tools of an adequate defense at no cost to defendant. State v. Touchet, 93-2839 (La.9/6/94); 642 So.2d 1213, 1215 (citing to Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971)). An indigent defendant seeking State funding for auxiliary services must establish that there is a reasonable probability that such services will assist the defense and that denial would result in an unfair trial. Touchet, 642 So.2d at 1216. The trial court makes this determination in accordance with the procedure set down in Touchet, 642 So.2d at 1221.
In view of the above authority, we find that the retention of private counsel from a collateral source at no cost to defendant does not rob the defendant of his right to a fair trial and thus defendant may be entitled to State funding for auxiliary services. The presence of retained counsel, be it from a collateral source or pro bono, should not work a hardship against an indigent accused who otherwise would be entitled to State funded auxiliary services. The determinative question is the defendant's indigency, not whether he has derived any assistance from collateral sources. Of course, a defendant who retains counsel at his own expense has not derived that benefit from a collateral source and therefore his indigent status must be questioned.
Therefore, the defendant here, having private counsel provided from a collateral source, may still be entitled to State funding *978 for auxiliary services provided he can meet the requirements of Touchet.[1]
It has been argued that such a ruling may lead to future abuses, such as a defendant expending an inordinate amount for private counsel then claiming indigency to access State funds.[2] However, the instant case is not one where defendant has rendered himself indigent by an unreasonable expenditure of his funds in retaining private counsel. The defendant here has been indigent throughout and his status is not in dispute. Nonetheless, in such a case of potential abuse, the local indigent defense board could challenge the defendant's indigent status and, if successful, the trial court would declare defendant no longer indigent and thus ineligible for State funded services. State v. Bourque, 95-0280 (La.4/21/95); 653 So.2d 548 (per curiam).

Court Appointed Co-counsel
The defendant also contends that because this is a capital case, he is entitled to two attorneys and that we should therefore order the trial court to appoint co-counsel. An indigent defendant clearly has no statutory right to having two attorneys in a capital case. La. S.Ct. Rule XXXI (R).[3] However, La. S.Ct. Rule XXXI (J)(a) does provide that a court shall appoint at least two attorneys to represent an indigent defendant in a capital case. Likewise, the Louisiana Standards on Indigent Defense also recommend a minimum of two attorneys in a capital case. This is premised upon one attorney assigned primary responsibility for the guilt phase and the other the sentencing phase. See State v. Williams, 480 So.2d 721, 728, n. 14 (La.1985). The presence of an additional attorney also decreases the chance for attorney error, especially important in a bifurcated capital trial. It is plainly preferable to have two attorneys in a capital case and we find no reason that the presence of collaterally retained private counsel should eliminate the need or countermand the advantages of two. Further, we can discern no reasoning nor find authority for the proposition that an indigent defendant is entitled to two State-funded attorneys, but an indigent defendant who has retained counsel from a collateral source is not entitled to a second counsel. Certainly, it is in the best interest of the taxpayer to encourage collaterally obtained counsel at no cost to the public fisc. It would therefore defy logic to punish such a defendant by refusing to appoint co-counsel because he has, in effect, saved IDB funds through retention of private counsel.
However, we reiterate that an indigent capital defendant has no recognized right to two attorneys and in some cases may not desire a second appointed counsel. In such a case, it would be unjust to require a defendant to accept appointed counsel along with his retained counsel. Because there is no right to second counsel, because a defendant may oppose the appointment, and because other unforeseen reasons may weigh against appointment of second counsel, such an appointment is left to the discretion of the trial court.
In the instant case, the factors weigh heavily in favor of appointing second counsel. This is a capital case and the presence of co-counsel would best serve the interests of all concerned, including the defendant, the IDB, and the public fisc, as well as the State's interest in ensuring that the defendant receives a fair trial with a minimum of errors. However, the trial court has yet to consider the issue. The court removed Di Giulio while simultaneously appointing two attorneys from the IDB. The defendant has yet to request appointment of second counsel following the reinstatement of Di Giulio by this opinion. Therefore, we decline to order the *979 trial court to appoint co-counsel at this time. The issue is not ripe for review.
We add as a final cautionary note that it is the defendant's indigency which gives rise to the appointment of counsel. In a case of suspected abuse, such as that previously discussed, the local IDB can challenge the defendant's indigent status, which could result in the loss of appointed co-counsel as well as State funding.

Guidelines
We have been urged to provide guidance regarding the setting of rules for governing the availability of State funds to possibly indigent defendants who have retained counsel. Of primary concern is the defendant who has retained counsel himself and consequently depleted his funds to the point that he may be declared indigent. Such a matter is not easily resolved and would involve a myriad of complex rules to cover a wide variety of contingencies. In light of the fact that this issue is not before us and because such a complicated set of rules is better left for the Louisiana Indigent Defender Board, which apparently has the statutory authority to promulgate such rules, La. R.S. 15:151.2(E), we decline to address this issue.

CONCLUSION
For the foregoing reasons, the ruling of the trial court removing Di Giulio as defendant's counsel is reversed.
REVERSED.
NOTES
[*] Lemmon, J., not on panel. Rule IV, Part 2, § 3.
[1] We note that the trial court has yet to consider this issue.
[2] This court would take a dim view of a defendant who intentionally misrepresents his status in order to access State funds. A defendant found to have perpetrated such a scheme could be subject to possible civil and criminal penalties, along with repayment of any acquired funds pursuant to La. R.S. 15:148.
[3] La. S.Ct. Rule XXXI (R) provides in relevant part: "The Rule [XXXI] shall not be construed to confer substantive or procedural rights in favor of any accused beyond those rights recognized or granted by the United States Constitution, the Louisiana Constitution, the laws of the state, and the jurisprudence of the courts."