1 WALTZER, Judge.
Relator invokes our supervisory jurisdiction challenging the ruling of the trial court, wherein the trial judge ordered the removal from the case of any and all attorneys working for the Orleans Indigent Defender Program. We grant the application for supervisory writs, reverse the judgment of the trial court and remand this matter for the reasons that follow.
STATEMENT OF THE CASE
On 2 March 2000 the defendant was indicted for first degree murder, a violation of LSA-R.S. 14:30. On March 16, 2000 he pleaded not guilty.[1] On March 21, 2000 Jasper Pharr, Esq. signed on as retained counsel. On 28 April 2000 the trial court found probable cause, but granted the motion to suppress the photo identification. The State noticed its intent to file for writs and filed writ 2000 K 1158 in this Court. On 7 September 2000 in writ 2000-K-1158 this Court granted and reversed the trial court’s decision to suppress the identification. On 13 November 2000 Mr. Pharr filed a motion to appoint an attorney to sit second chair at trial. The court appointed OIDP. On 29 November 2000 the defendant and Mr. | ¡¿Pharr appeared for trial. The trial court declared a mistrial. On 5 February 2001 the defense filed a motion to declare William Thomas and Elton Bowman unavailable, which was granted. The State filed a writ application in this Court (writ 2001-K-0350), and this Court denied the writ on 22 February 2001. The State filed for writs (2001-KK-0579) at the Supreme Court, which stayed the matter on 5 March 2001. On 7 March 2001 the Louisiana Supreme Court recalled the stay, and reversed this Court and the trial court.
According to the defendant, on 21 May 2001 jury selection began in his second trial. At the first break on 22 May 2001 Mr. Pharr presented a notice of conflict of interest to the court and made a record of his prior involvement with Mr. Parker, the State’s star witness. Mr. Parker had been represented by Mr. Pharr. He had signed the waiver of rights form in two prior guilty pleas. The trial court adjourned and decided that the conflict of interest was evident and Mr. Pharr could not represent the defendant. The State then moved to remove all other offices currently associated with the case because the attor *417 neys were tainted with the conflict of interest as well. The trial court ruled that the OIDP attorneys and OIDP, as well as Mr. Pharr were removed from the capital case.[2] Although the defendant indicates that a status hearing was set for 15 June 2001, it is impossible to know whether the hearing was held because the docket master ends on 12 March 2001. This writ involves the pretrial removal of defense counsel. The facts are not relevant.
I,,DISCUSSION
Richard Rydelek and Jeffery Smith, OIDP defense attorneys, assign as error that the trial court summarily removed defense counsel with whom the defendant has a strong attorney-client relationship, without conducting an evidentiary hearing. The attorneys note that implicit in the State’s motion to remove OIDP and the trial court’s decision is the assumption that Jasper Pharr confided Mr. Parker’s privileged communications to Mr. Smith and Mr. Rydelek. Yet the OIDP attorneys contend that they (the penalty phase attorneys) had practically no contact with Mr. Pharr until the first day of trial on 21 May 2001. Along with Mr. Pharr, they stated on the record as officers of the court that Mr. Pharr had made no mention of Mr. Parker or any attorney-client conversations. They attach Mr. Pharr’s affidavit in which he declares that he never violated his obligation to Mr. Parker by divulging privileged communications.[3] The defense attorneys argue that no basis was provided by the State or the trial court for the decision that OIDP had to be removed because the entire office was “tainted”. They contend that if the court had any legitimate concerns about a breach of an attorney-client privilege, a hearing should have been held to explore the violation. However, they contend that a hearing was not necessary in light of the assertions by Mr. Pharr, Mr. Smith, and Mr. Rydelek that no breach occurred. The OIDP attorneys argue that the trial court erred by severing a well-established attorney-client relationship in a capital case without cause.
On 22 May 2001 Mr. Pharr presented to the court an ex parte notice of conflict of interest, in which he noted that on that date he and co-counsel discussed |4the case and “the subject of a conflict of interest arose.” He acknowledged that he had represented Patrick Parker in two prior guilty pleas: a 1997 possession of marijuana; and a 1997 possession of‘crack cocaine; and possibly other criminal charges from 1997 to 1999 that were refused.
Mr. Pharr declared that prior to trial on 27 November 2000 he made the State and (he thought) the court aware that he knew Patrick Parker. At that time he thought that Mr. Parker had been a witness in one of the cases he handled. He thought that he might have represented Mr. Parker at one point in time, but he did not really remember Mr. Parker. Mr. Pharr explained that he handled a volume of cases in 1997-1999. When the documents were given to him that second morning of trial, Mr. Pharr said that he then remembered Mr. Parker and felt that there was a conflict of interest. He did not remember waiving the privilege back in November 2000 or the defendant waiving his privi *418 lege; surely Mr. Parker had not waived his privilege. Mr. Pharr declared that he listened to the tapes of Mr. Parker’s statement the night before, and then “everything started coming back.” Before that when he saw Mr. Parker at the hearing and trial before, he did not remember Mr. Parker. Mr. Pharr noted that he was attaching the waiver of rights forms in Mr. Parker’s two prior cases, 390-574 and 390-557, which he had signed as counsel.
The State argued that prior to the first trial, Mr. Pharr had informed the State about his representation of Mr. Parker in the past and told the prosecutor “all sorts of things” about Mr. Parker and why the State should plead out this case. Any conflict was dealt with before the first trial. Mr. Pharr explained that he had negotiated with the State prior to the first trial and had exaggerated Mr. Parker’s reputation based upon what other people had told him about Mr. Parker. After [ sseeing the waiver of rights forms and police reports, Mr. Pharr explained that he remembered Mr. Parker, who is the victim’s witness in this capital case. Mr. Pharr said that Mr. Parker told him some things back in 1997, but he could not use them even to impeach Mr. Parker because of attorney-client privilege. The trial court questioned counsel’s timing. The court was presented with the conflict of interest document right before 10:00 a.m. after picking a jury the day before and the alternates that morning. Mr. Pharr stated that the documents were handed to him while the alternates were in the courtroom before the conclusion of the picking of the jury. However, Mr. Pharr said that he had to review the documentation and decide whether he felt that there was a conflict. Mr. Pharr conceded that the documents were secured the day before on 21 May 2001; however, he did not have them until that morning. Mr. Rydelek explained that the defense investigators were pulling the old records of potential witnesses. After court had concluded on 21 May it was the first time that he realized that there might be the potential for a conflict of interest. The morning of 22 May was Mr. Rydelek’s first opportunity to make Mr. Pharr aware of the documents. The State again noted that there had been a first trial six months before, and the prosecutor recalled addressing the issue with Mr. Pharr, who acknowledged that he knew Mr. Parker and had represented him before. Mr. Smith, defense counsel, interjected that in the transcript of the first trial Mr. Pharr never asked Mr. Parker if he had a prior conviction; therefore, it appeared that Mr. Pharr was not aware of Mr. Parker’s 1997 guilty plea to possession of cocaine (where he represented him). Mr. Smith argued that Mr. Parker was the only real witness to the shooting, and the defendant allegedly killed Mr. Parker’s friend and wounded him; the defendant should not be represented by IfiCounsel who had previously represented Mr. Parker. Mr. Pharr could not use what he knew to cross-examine Mr. Parker, his former client.
Mr. Pharr declared that he had spoken to the defendant, who did not wish to waive his privilege and felt that there would be a conflict of interest and that Mr. Pharr would not be able to properly cross-examine Mr. Parker. The trial court expressed concern that there had been a prior trial at which Mr. Parker testified, a motions hearing, and the beginning of a second trial before the conflict came to light. The court noted that it was known by 3:00 p.m. on 21 May 2001 when the Clerk’s Office closed, that Mr. Pharr had represented Mr. Parker in the two prior cases. Mr. Pharr explained that the investigator had the information; he was not aware of the documents until the morning of 22 May. Mr. Smith argued that the real *419 issue was whether the defendant, after being made aware of Mr. Pharr’s prior representation of Mr. Parker, would want him to continue as his counsel. The defendant declared that he learned about the prior representation that morning. He said that he did not think that he would have a fair trial with Mr. Pharr representing him because Mr. Pharr knew confidential information about Mr. Parker, which may need to be brought out at the trial, but could not use it. He did not wish to waive his rights, but he wanted to continue with trial. The trial court reiterated its concern about the timing of the presentation of the conflict of interest. The court stated that in light of the gravity of the case and the defendant’s response that he would not have hired Mr. Pharr and did not want him to continue to represent him at trial, the court decided to stop the trial and dismiss the selected jurors. At that point the State noted that the information about Mr. Parker had been shared with the five-defense counsel present. The State claimed that the “strange documents” appearing the day before could only have been found through “some sort of a ^communication of this privilege.” The prosecutor therefore moved to remove all the counsel and their respective agencies or firms from the case. Mr. Smith asked what conflict there could be if OIDP represented the defendant at the penalty phase. The court declared: “They have been provided with the same information that poses the conflict for Mr. Pharr through his representation of Mr. Parker in the past.” The State claimed that OIDP provided Mr. Pharr with the information. Mr. Pharr explained that it was the information that he learned through his representation of Mr. Parker that formed the basis of the conflict. The documents from the prior cases were not problematic, and the other attorneys knew nothing of information about Mr. Parker protected by attorney-client privilege. Mr. Pharr argued that the OIDP attorneys knew only that he represented Mr. Parker and signed the two waivers of rights forms in Mr. Parker’s two prior cases.
The State countered 'that OIDP attorneys provided Mr. Pharr with the notice of conflict. The court asked whether Mr. Pharr had provided information as to the possible other criminal charges from 1997-1999, which may have been refused. Mr. Pharr declared that he had not prepared that document. He explained that the OIDP attorneys found that information in the public record when they were investigating Mr. Parker. Mr. Rydelek countered that all the information in the notice of conflict was obtained from the public record and Mr. Parker’s rap sheet turned over by the State. He first saw the documents after the end of trial the day before; that was the first that he knew of a possible conflict of interest. He drafted the notice of conflict according to what he knew. Because Mr. Parker had over twenty other arrests but no other convictions, Mr. Rydelek thought that it might be possible that Mr. Pharr had represented him other times as well as for the two | aguilty pleas. Mr. Rydelek stated that he had been on the case only five weeks and he had no discussions with Mr. Pharr. The court concluded:
The Court believes, again, just out of [sic] abundance of caution to make sure that all [sic] individual’s rights and interest are protected, the Court believes that the conflict is this, that every defense counsel, everyone operating on the defense of Mr. Dedrick Griffin at this time, [sic] all of them are removed.
Mr. Pharr asked that the trial court appoint an attorney immediately because the defendant’s family was indigent. The defendant declared that he did not want a *420 mistrial. He wanted to “proceed with the trial and get somebody to represent” him.
In State v. Jones, 97-2593, pp. 2-3 (La.3/4/98), 707 So.2d 975, 976-77, the Louisiana Supreme Court discussed the indigent defendant’s right to counsel:
While .... an indigent defendant does not have the right to have appointed counsel of choice, a defendant does have the right to counsel of choice so long as defendant can obtain and afford the services of said counsel. La. Const, art. I, § 13 provides in relevant part: “At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment.” The Sixth Amendment to the United States Constitution likewise carries such a guarantee. Although the Sixth Amendment primarily guarantees the right to effective counsel, it also includes the right to select and be represented by counsel of choice. Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 1696, 100 L.Ed.2d 140 (1988); Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932) (stating unequivocally, “[i]t is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.”).
Though this Court has not addressed this issue in the instant context, we have discussed a criminal defendant’s right to counsel. In State v. Harper, 381 So.2d 468, 470-71 (La.1980), this Court stated:
As a general proposition a person accused in a criminal trial has the right to counsel of his choice. State v. Leggett, 363 So.2d 434 (La.1978); State v. Mackie, 352 So.2d 1297 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). If a defendant is indigent he has the right to court appointed counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Argersinger v. Hamlin, [407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972) ]; State v. Adams, 369 So.2d 1327 (La.1979); City of Baton Rouge v. Dees, 363 So.2d 530 (La.1978). An indigent defendant does not have the right to have a particular attorney appointed to represent him. State v. Rideau, 278 So.2d 100 (La.1973). An indigent’s right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. State v. Jones, 376 So.2d 125 (La.1979); State v. Leggett, supra; State v. Mackie, supra, (emphasis added).
In State v. Jones, 707 So.2d at 975, the Court noted that the paid attorney had been retained by the defendant’s father at no cost to the defendant. Therefore, the defendant could manage to retain that attorney, and the Constitutions of the United States and Louisiana precluded his removal. The Court concluded that neither the defendant’s status as an indigent nor the statutory guidance regarding appointment of counsel in capital cases could defeat his constitutional right to counsel. Id.
In Davis v. Cain, 95-2455 (La.11/13/95), 662 So.2d 453, the Louisiana Supreme Court granted the defense writ and held that the district court erred in failing to appoint a particular attorney from the Loyola Death Penalty Resource Center as counsel for relator in a post-conviction situation where the petitioner was entitled to counsel under LSA — C.Cr.P. art. 930.7. The Court noted that monetary considerations were legitimate concerns, but stated that other factors bore on the determina *421 tion of which attorney to appoint. The Supreme Court declared that the attorney from the center and her staff had spent hundreds of hours obtaining a stay of execution and analyzing and investigating the case. She did not seek reimbursement for time and resources already devoted and had asserted that she |inwould not do so in the future. The Court also stated that any other attorney appointed would have to invest a lot of time and considerable resources to equal the attorney’s knowledge of the facts and legal issues. Id. at 454.
In the instant case it is not clear why the trial court decided that the OIDP attorneys on the case and the entire office should be removed from this capital case. The State had alleged that information about Mr. Parker had been shared by all the defense attorneys, but provided nothing to support its allegation. The defense attorneys persuasively argue that only Mr. Pharr had the conflict of interest because he had represented the State’s main witness, Mr. Patrick Parker, years before and had an attorney-client relationship; therefore, Mr. Pharr could not use privileged information about Mr. Parker to discredit his testimony. However, Mr. Smith and Mr. Rydelek had never represented Mr. Parker; they had never discussed Mr. Parker with Mr. Pharr; and they had never had an attorney-client relationship with Mr. Parker. They explained to the court that their knowledge of Mr. Parker was garnered from the public records of his prior guilty pleas, and they were not privy to any confidential information.
Although the trial court did not hold a separate evidentiary hearing on the motion to remove counsel, Mr. Smith and Mr. Rydelek responded to the State’s accusations and attempted to answer the trial court’s concerns. Mr. Pharr declared that only he had represented Mr. Parker, and he had a conflict of interest. It would make no sense to hold another hearing on the issue of the motion to remove counsel. They would not be able provide any additional information.[4]
InThe State alleged no basis for requesting the removal of OIDP other than its claim that information about Mr. Parker was shared by all the defense attorneys and that the documents relating to Mr. Parker’s prior guilty pleas could only have been found if privileged information had been shared by Mr. Pharr. However, Mr. Pharr and the OIDP attorneys satisfactorily explained how the information was discovered. The trial court articulated no clear basis for removing OIDP as counsel when its attorneys had established an attorney-client relationship and developed a bond of trust, especially necessary in a capital case. The court mentioned the “protection of the individual’s rights” when it decided “out of [sic] abundance of caution” to remove “everyone operating on the defense.” Like the attorneys in Davis v. Cain, 662 So.2d at 453, OIDP attorneys, Mr. Smith and Mr. Rydelek, have spent many hours reviewing, researching, and preparing for the trial and penalty phase. If they are removed, other attorneys will be compelled to spend that time to become familiar with the case. This is a capital case, and the defendant’s relationship with his attorneys is crucial when he is fighting for his life. The defendant’s arguments have merit and deserve to be carefully considered.
Accordingly, we grant the application for supervisory writ, reverse the ruling of the *422 trial court and remand this matter to the trial court for further disposition.
APPLICATION FOR SUPERVISORY WRIT GRANTED, JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED.
McKAY, J., concurs in result.

. The procedural history is taken from the docket master computer generated by means of this Court's link to criminal district court. The last docket master entry is March 12, 2001. Therefore, the end of the procedural history is taken from the defendant’s application.

. According to the defense application, the defendant was left without counsel, and he is still without counsel. In the application the defendant also claims that the trial court passed to him a handwritten note, which contained a telephone number and two local attorneys' names (apparently suggesting that the defendant hire one of them even though he is indigent).

. That affidavit should not be considered because it was not filed below and was not before the trial court prior to its decision to remove OIDP from the case.

. However, the defendant was never asked if he wanted the two OIDP attorneys to continue to represent him. Mr. Smith and Mr. Rydelek have filed this writ application on the defendant’s behalf to remain on the case.