b MAX N. TOBIAS, JR., Judge.
On 2 October 2001, the defendant, Jessie Lookadoo, III (“Lookadoo”), was charged by bill of information with the intentional or criminally negligent discharge of a firearm where it was foreseeable that it might result in death or great bodily harm to a human, a violation of La. R.S. 14:94. Loo-kadoo pleaded not guilty at his 10 October 2001 arraignment. The trial court denied Lookadoo’s motion to suppress on 16 November 2001. On 29 January 2002, Looka-doo waived his right to trial by jury and was found guilty as charged at the close of a bench trial. The state then charged Lookadoo as multiple offender pursuant to La. R.S. 15:529.1. On 7 February 2002, Lookadoo admitted his identity as the person previously convicted of the felony offense charged in the habitual offender bill of information. He was adjudicated a second-felony habitual offender and sentenced to two years at hard labor. On 20 June 2002, this court granted Lookadoo’s writ application for the purpose of transferring it to the trial court for filing as a motion *646 for an out-of-time appeal.[1] The trial court granted Lookadoo an out-of-time appeal on 1 July 2002.

\ .FACTS

New Orleans Police Officer Phillip Brigham and his partner Officer Bruce Gentry were in the North Miro Street courtyard of the Lafitte Housing Development at approximately 2:40 a.m. on 22 September 2001 when they responded to sounds of gunfire coming from Orleans Avenue. They observed two individuals shooting at each other. Lookadoo had a semiautomatic pistol in his hand and fired an estimated four to five shots in the presence of the officers. He expended all of the ammunition in the magazine of his pistol. Looka-doo dropped his pistol when he saw the officers and attempted to flee. Officer Gentry apprehended him. Officer Brigham identified a gun introduced in evidence as the one Lookadoo discarded. It was recovered approximately one and one-half feet away from where Lookadoo was apprehended. The second individual fled on a motorcycle and was never apprehended. Officer Brigham testified that Orleans Avenue at the location where Loo-kadoo had been shooting had businesses on one side and the Lafitte Housing Development on the other, where people resided.

ERORRS PATENT

A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR

In Lookadoo’s sole assignment of error, he argues that the trial court erred in failing to permit him to substitute his counsel on the day of trial.
When the case was called for trial, the following colloquy occurred:

hMR. FONTENELLE:

Your Honor, for the record, Mr. Loo-kadoo is demanding a twelve-man jury. I’ve explained to him that he’s only entitled to a six-man jury because it’s with or without hard labor. I even had him read both laws regarding the number of jurors and the potential sentence for this charge, however, Mr. Lookadoo has insisted upon a twelve-pack and says I must be against him if I don’t demand a twelve-pack.

MR. LOOKADOO:

I didn’t tell him that but I don’t want him to represent me. He called me “stupid” — He called me “stupid” before.

MR. FONTENELLE:

And you told me to “fuck off’, too.

MR. LOOKADOO:

After you called me “stupid”.
MR. FONTENELLE:
Well, sir, if you read the law and still refuse to acknowledge it, that’s not a smart thing to do.

MR. LOOKADOO:

I don’t want him to represent me.

THE COURT:

Well, you don’t have a choice. The only choice is if you could hire a lawyer, but Mr. Fontenelle is the public defender assigned to this section of court. He has been involved with your case from the beginning and is looking out for your best interest.
This court set forth the applicable law in State v. Harrison, 2000-0213 (La.App. 4 Cir. 2/21/01), 782 So.2d 86.
“As a general proposition a person accused in a criminal trial has the right to counsel of his choice.” State v. Jones, 97-2593, p. 3 (La.3/4/98), 707 So.2d 975, 977, quoting State v. Harper, 381 So.2d 468, 470-71 (La.1980); La. Const, art. I, § 13 (at every stage of a criminal pro *647 ceeding a defendant “is entitled to assistance of counsel of his choice”). However, the right is not absolute, and it must “be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system.” State v. Trepagnier, 97-2427, p. 8 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 188, quoting State v. Leggett, 863 So.2d 484, 436 (La.1978). “Thus, the Louisiana Supreme Court has repeatedly upheld the trial court’s denial of motions made 14on the day of trial based upon the defendant’s dissatisfaction with appointed counsel. See State v. Seiss, 428 So.2d 444, 447 (La.1983) and cases cited therein.” Id.
2000-0213, p. 5, 782 So.2d at 91.
“There is no constitutional right to make a new choice of counsel on the very date trial is to begin, with the attendant necessity of a continuance and its disrupting implications.” State v. Leggett, 363 So.2d 434, 436 (La.1978).
Lookadoo disputes the trial court’s statement that the only choice he had if he was dissatisfied with his counsel was to hire a private attorney, as Mr. Fontenelle was “the” public defender assigned to that section of court. Lookadoo notes that another public defender represented him at a 16 November 2001 appearance, and submits that that attorney could have been appointed to represent him. The trial transcript reflects that Lookadoo did not testify on his own behalf, although his counsel advised him to do so. Lookadoo infers that he might have testified had another counsel recommended that he do so, but that he could not bring himself to believe in and follow Mr. Fontenelle’s advice and was forced to proceed as though he were not represented at all.
Lookadoo cites no case analogous to this one. Even assuming arrangements could have been made to secure for him another attorney, he had no constitutional right to make that change on the day of trial. Mr. Fontenelle thoroughly cross-examined the only witness to testify at Lookadoo’s trial, and no indication in the record is found that his performance was less than that constitutionally guaranteed him. Looka-doo suggests that he could not trust Mr. Fontenelle because he called him “stupid” minutes before trial was to commence. Lookadoo implies that he would have followed the advice to testify on his own behalf if a different attorney ]Rhad given such advice. However, the trial court made clear to Lookadoo that Mr. Fonte-nelle had been correct in informing him that he could only be tried by a jury composed of six persons, not twelve. Thus, the court had confirmed Mr. Fonte-nelle’s competency in some measure. Loo-kadoo, who, with an eleventh-grade education had more education than many in his circumstances, may have chosen not to testify as an act of defiance toward Mr. Fontenelle. If he impaired his own defense in a vain gesture of defiance, he is required to live with the consequences of that decision.
Considering all of the facts and circumstances, we do not find that the trial court erred in denying Lookadoo’s request for a change of counsel on the day of and immediately prior to the start of his trial.
There is no merit to this assignment of error.

CONCLUSION

For the foregoing reasons, Lookadoo’s conviction and sentence are affirmed.

AFFIRMED.

. State v. Lookadoo, unpub., 2002-1055 (La.App. 4 Cir. 6/20/02).