Death Opinion














IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-45,875-02






FERNANDO GARCIA, Relator



v.



THE HONORABLE ERNEST WHITE, Respondent








ON MOTION FOR LEAVE TO FILE APPLICATION FOR 


WRIT OF MANDAMUS FROM CAUSE NO. F89-96959


IN THE 194TH JUDICIAL DISTRICT COURT


DALLAS COUNTY






 Cochran, J., filed a concurring statement in which Johnson and Alcala, JJ.,
joined.



 I join in the Court's order denying leave to file an application for writ of mandamus. 
Fernando Garcia, the relator and the defendant in a pending capital-murder sentencing retrial,
claims that he is being denied his right to chosen counsel. But he has not shown that he "has
a clear right to relief" on his pre-trial writ of mandamus. (1) Although relator raises difficult
issues of constitutional dimension, these issues involve novel or unsettled law and thus are
not well-suited to resolution in the context of a pretrial mandamus action. Furthermore,
relator has not yet suffered any irreparable harm, as he may yet be permitted counsel of his
choice for his resentencing trial.

 I.


 Relator was originally convicted of capital murder and sentenced to death in 1989. 
This Court affirmed his conviction and sentence on direct appeal (2) and denied habeas relief
in 2001. (3) On September 18, 2008, the federal district court overturned his death sentence,
based on Penry-error and a jury nullification instruction, and returned relator to Dallas
County for resentencing. (4) 

 The Dallas County District Attorney's Office has indicated its intent to once again
seek the death penalty. All parties agree that relator is and has been indigent throughout
these proceedings; thus, he is entitled to the appointment of counsel under the provisions of
Article 26.052. (5) Under that statute, the trial judge "shall appoint two attorneys, at least one
of whom must be qualified under this chapter, to represent an indigent defendant as soon as
practicable after charges are filed, unless the state gives notice in writing that the state will
not seek the death penalty." (6)

 The procedures set out in that statute were not followed in this case because, when
relator was returned to Dallas County, attorney Danalynn Recer (7) took on the role of pro bono
lead counsel at relator's specific request. (8) For over a year, she litigated numerous pretrial
motions and supervised the work of investigators on the case. 

 In December of 2009, Ms. Recer was diagnosed with breast cancer. She was
uncertain whether, after her surgery, she would be able to return to work relatively quickly. 
One of the Board Members for Ms. Recer's nonprofit wrote the trial judge saying that Bobby
Mims, an experienced attorney from Tyler, (9) was willing to take on the case as an appointed
attorney, but that the scheduled trial date would have to be modified because he had not had
an opportunity to familiarize himself with the case. Therefore, in January, 2010, the trial
judge signed an order finding relator indigent and entitled to appointment of counsel. (10) He
appointed Bobby Mims as lead counsel for relator and granted Ms. Recer's Motion to
Withdraw, with the caveat that if Ms. Recer recovered from her cancer "her reinrollment into
the case shall not be the basis for a continuance of the trial date set for January 2011." 

 The trial judge "waited for Mr. Mims to advise the Court of his choice for second
chair counsel." (11) On July 21, 2010, Ms. Recer, having recovered from her cancer surgery,
filed a "Notice of Re-Enrollment," notifying the trial judge that she would return to the case
as lead counsel, "alongside appointed counsel Bobby Mims" who had been working alone
on the case for some seven months. At that point, the trial judge sent Mr. Mims a letter
stating that, "[i]f Ms. Recer 're-enrolls' in the case as retained counsel the Court would no
longer be obligated to pay for your time on the case[.]" On the other hand, if Mr. Mims
remained as lead counsel, the trial judge would appoint a second attorney to assist him.

 Relator objected. In an affidavit, he stated, inter alia,

 Ms. Recer recently found out that she is cancer-free and is now able to
represent me again. I want Ms. Recer to return to her position as lead counsel
in my case.

 I also have developed an attorney-client relationship with Bobby Mims. He
has visited me several times and talked with me about issues in my case. I
want him to continue to represent me along with Ms. Recer. When he was
appointed, it was my understanding that Mr. Mims was appointed until my
case was over.

 I have been on death row for over 20 years and am indigent. I cannot afford
to pay for any part of my representation. I have never waived and do not
waive any of my rights under state or federal law, including my right to
counsel, my right to have my existing attorney-client relationships preserved,
my right to privileged communications with counsel and other rights and
protections.

 The choice seems to have come down to either (1) Ms. Recer would represent relator
alone on a pro bono basis, (12) or (2) the trial judge would appoint two attorneys under Article
26.052, and they would each be compensated. Both Ms. Recer and Mr. Mims joined relator
and wished to remain on his case: one acting pro bono and one appointed. The trial judge
then conducted several hearings during the second half of 2010 without making any decision
on the matter. Finally, on April 8, 2011, the trial judge denied relator's request and ordered
Mr. Mims removed from the case. Relator then filed this mandamus action. We requested
further briefing on specific issues, (13) and the respondent trial judge responded, as did several
amici curiae on behalf of relator. (14) 

II.


 In his response, the trial judge argues that relator himself effectively removed Mr.
Mims as appointed lead counsel when Ms. Recer, his pro bono attorney, re-enrolled as lead
counsel. (15) He argues that because relator re-enrolled Ms. Recer as lead counsel, he had
neither statutory authority nor the obligation to appoint only second-chair counsel to assist 
the pro bono lead counsel. Moreover, the trial judge asserts that he would be interfering with
relator's counsel of choice if he were to follow Article 26.052 with regard to the appointment
of two attorneys since relator has designated Ms. Recer as lead counsel. (16) And, even if he
could appoint only second-chair counsel, he is not obligated to do so because relator "has no
less than six attorneys." (17) Finally, the trial judge concludes that mandamus is inappropriate
because relator has not shown that the trial judge violated a clear ministerial duty. 

 A defendant, under most circumstances, has the right to retained counsel of his
choice. (18) On the other hand, a defendant does not have the right to appointed counsel of his 
choice, but a judge may not arbitrarily remove his appointed counsel whom he has grown to
accept and gained confidence in. (19) As we have previously held, 

 [O]nce an attorney is serving under a valid appointment by the court, and an
attorney-client relationship has been established, the court may not arbitrarily
remove the attorney over the objections of both the defendant and his
counsel. (20)


 In the present case, Mr. Mims worked as lead counsel with relator for close to seven
months before Ms. Recer recovered and returned. Both Ms. Recer and Mr. Mims join relator
in requesting that Ms. Recer remain as lead counsel and Mr. Mims remain as co-counsel. The issue then, is whether the trial judge "arbitrarily" removed Mr. Mims as lead
counsel when Ms. Recer returned. Did the trial judge have a ministerial duty-a "clear and
unambiguous legal duty"-to not remove Mr. Mims? I agree that the law in this area is
unsettled.

 Part of the complication is that Article 26.052 states that the trial judge shall appoint
two attorneys to an indigent defendant in a capital case in which the State seeks the death
penalty. Period. There are no exceptions, (21) such as when an indigent defendant has a pro
bono attorney. The fact that an attorney has volunteered to represent a capital defendant on
a pro bono basis does not mean that the defendant is not indigent and does not, at least on its
face, obviate the applicability of Article 26.052. (22) But the statute does not address the
present situation: If an indigent capital defendant has obtained the services of one pro bono
counsel, is Article 26.052 satisfied? Because we have not previously addressed this question
and because the answer is not so obvious as to be beyond all reasonable dispute, I agree that
pretrial mandamus relief is inappropriate.

Filed: November 16, 2011

Publish
1. See Bowen v. Carnes, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011) (setting out two-part
test for obtaining mandamus relief: (1) no adequate remedy at law; and (2) proof of a "clear right
to the relief sought-that is to say, when the facts and circumstances dictate but one rational decision
under unequivocal, well-settled . . ., and clearly controlling legal principles.)."
2. Garcia v. State, 887 S.W.2d 846 (Tex. Crim. App. 1994).
3. Ex parte Garcia, No. WR-45,875-01 (Tex. Crim. App. Feb. 28, 2001) (not designated for
publication).
4. Garcia v. Quarterman, 3:01-CV-0580-G (N.D. Tex. Sept. 18, 2008) (not designated for
publication).
5. Tex. Code Crim. Proc. art. 26.052(a).
6. Id. art. 26.052(e).
7. Ms. Recer is the Director of the nonprofit Gulf Region Advocacy Center (GRACE).
8. Relator signed an affidavit stating that he wanted "Danalynn Recer, and those working with
her, including Maurie Levin, to be my lawyers. . . . I do not want to talk to other lawyers or to any
police or court officials about my case."
9. Mr. Mims is listed as an attorney qualified for appointment to death-penalty cases in the
First Administrative Judicial Region. (Respondent's Exhibit C).
10. The Order Appointing Counsel states that it was signed on January 28, 2009, but this is
certainly a clerical error as Mr. Mims was not appointed until January of 2010.
11. Respondent's Response to Motion for Leave to File Petition for Writ of Mandamus at 9.
12. The trial judge states that other lawyers had also been assisting Ms. Recer on a pro bono
basis. Relator denies that other attorneys are currently assisting him. He states that both Ms. Recer
and Mr. Mims obtained the assistance of an attorney who is an expert in bitemark evidence solely
for the purpose of a pre trial Daubert hearing, but that this attorney has never met or appeared on
behalf of relator. In relator's response to our Order, Ms. Recer states the following:

 No attorney other than undersigned counsel is currently representing Mr.
Garcia in his resentencing trial. None of the students, fellows, law professors or
consultants who have played small and temporary roles at various times over the long
course of this case have ever offered or agreed to serve as trial counsel. None are
willing to serve as trial counsel. None are funded to serve as trial counsel. None
have the intention of serving as trial counsel.

[Response on] Application for Writ of Mandamus at 6.
13. Those questions were:

(1) The original "Notice of Enrollment" in this case indicated that Jordan Steiker, Maurie Levin,
and Danalynn Recer were going to represent relator. Are Steiker and Levin still representing
relator? If not, why and when did the representation cease?

(2) In a letter to the trial judge, it was indicated that Teresa Norris was to take over the pro bono
representation of relator in addition to Bobby Mims. Did that happen? If not, then why?

(3) The order appointing Mims as counsel is not in the record before this Court. When did this
appointment occur and was Mims appointed as lead counsel in Recer's absence?
14. The Dallas County District Attorney's Office, though invited to do so, did not respond.
15. The trial judge asserts that Ms. Recer, as pro bono counsel, is, for all purposes, equivalent
to "retained" counsel in this case. The trial judge does not cite any authority for this proposition, but
relator does not cite any authority to dispute this proposition. I think that this is an unsettled legal
issue in this context and thus one of the reasons why mandamus relief in inappropriate. However,
both relator and respondent might wish to refer to State v. Jones, 707 So.2d 975 (La. 1998), Spaziano
v. Seminole County, 726 So.2d 772 (Fla. 1999), and People v. Howery, 687 N.E.2d 836 (Ill. 1997),
for whatever light those out-of-state cases might shed on the present situation.
16. Whether the trial judge has an obligation under Article 26.052 to appoint second-chair
counsel (and therefore keep Mr. Mims on the case as second chair, rather than lead counsel, because
of his established attorney-client relationship) is a different question than that which is raised in
relator's mandamus application. Relator asks this Court to order the trial judge to vacate his order
dismissing Mr. Mims as lead counsel. Vacating the order dismissing Mr. Mims as lead counsel
would only create the quandary of having two lead counsel, and it would not answer the question of
whether relator is entitled to second-chair counsel when a pro bono attorney is lead counsel.

 One sensible way to cut through the Gordian Knot that has prevented this resentencing trial
from proceeding for almost two years would be for the trial judge to reappoint Mr. Mims as second-chair counsel under the statute. This would both save Dallas County a considerable sum of money
and ensure that relator is represented by the counsel of his choice. I do not suggest that the trial
judge is legally required to do so, but such a solution would satisfy all of the parties and conserve
considerable scarce financial resources for the taxpayers both at trial and if there is any appeal.
17. As noted above, relator asserts that none of the named attorneys-Maurie Levin, Jordan
Steiker, Clive Stafford Smith, Natasha Merle, or Christopher Plourd-are assisting in the resentencing
trial. This factual dispute is another reason why pretrial mandamus relief may be inappropriate.
18. United States v. Gonzalez-Lopez, 548 U.S. 140 (2006) (trial court's erroneous deprivation
of defendant's Sixth Amendment right to counsel of choice entitled him to reversal of his conviction,
as error was "structural" and not subject to review for harm); Wheat v. United States, 486 U.S. 153,
159 (1988); Bowen & Bowen v. Hon. Burt Carnes, 343 S.W.3d 805, 816 (Tex. Crim. App. 2011)
(granting pretrial mandamus relief when trial judge disqualified defendants' retained counsel without
a showing of "an actual conflict or a serious potential for conflict").
19. See Bowen & Bowen, 343 S.W.3d at 813; Stearnes v. Clinton, 780 S.W.2d 216, 225 (Tex.
Crim. App. 1989); Buntion v. Harmon, 827 S.W.2d 945, 949 (Tex. Crim. App. 1992).
20. Stearnes, 780 S.W.2d at 221; see also Buntion, 827 S.W.2d at 949 ("Although an indigent
defendant does not have the right to counsel of his own choosing, once counsel is appointed, the trial
judge is obliged to respect the attorney-client relationship created through the appointment. . . . The
attorney-client relationship between appointed counsel and an indigent defendant is no less inviolate
than if counsel is retained.").
21. See Coit v. State, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991) ("Where the statute is clear
and unambiguous the Legislature must be understood to mean what it has expressed, and it is not for
the courts to add or subtract from such a statute.").
22. The Louisiana Supreme Court, in State v. Jones, 707 So.2d 975 (La. 1998), addressed a
similar issue concerning a capital-murder defendant with respect to appointment of counsel for an
indigent whose father had retained one lawyer. Louisiana, unlike Texas, has no statute requiring two
appointed attorneys for indigent capital defendants. Id. at 978. But the court noted that a state
supreme-court rule provides "that a court shall appoint at least two attorneys to represent an indigent
defendant in a capital case." Thus, the court stated that, while it may not be constitutionally or
statutorily required, "[i]t is plainly preferable to have two attorneys in a capital case and we find no
reason that the presence of collaterally retained private counsel should eliminate the need or
countermand the advantages of two." Id. at 978. The court also stated that there was little rhyme
or reason to think that an indigent defendant is entitled to two appointed attorneys paid for by the
state, but no appointed attorney if an attorney is willing to represent the defendant pro bono or with
collateral funding. Id. As the court explained,

 Certainly, it is in the best interest of the taxpayer to encourage collaterally obtained
counsel at no cost to the public fisc. It would therefore defy logic to punish such a
defendant by refusing to appoint co-counsel because he has, in effect, saved [Indigent
Defender Board] funds through retention of private counsel. 

Id. However, the supreme court concluded that, in Louisiana, unlike in Texas, "an indigent capital
defendant has no recognized right to two attorneys and in some cases may not desire a second
appointed counsel." Thus, the trial judge has discretion in balancing various factors concerning
appointment of second counsel. In the present case, the court stated that "the factors weigh heavily
in favor of appointing second counsel," but because the trial judge in the Jones case had not yet
exercised his discretion, the issue was not yet ripe for review. Id. at 978-79.