Fernando GARCIA, Relator

v.

The Honorable Ernest WHITE,
Respondent.

No. WR–45,875–02.

Court of Criminal Appeals of Texas.

Nov. 16, 2011.

Danalynn Recer, for Fernando Garcia.

COCHRAN, J., filed a concurring
statement in which JOHNSON and
ALCALA, JJ., joined.

I join in the Court's order denying leave
to file an application for writ of mandamus.
Fernando Garcia, the relator and the de-
fendant in a pending capital-murder sen-
tencing retrial, claims that he is being
denied his right to chosen counsel. But he
has not shown that he "has a clear right to
relief" on his pre-trial writ of mandamus.[1]
Although relator raises difficult issues of
constitutional dimension, these issues in-
volve novel or unsettled law and thus are
not well-suited to resolution in the context
of a pretrial mandamus action. Further-
more, relator has not yet suffered any

irreparable harm, as he may yet be per-
mitted counsel of his choice for his resen-
tencing trial.

## I.

Relator was originally convicted of capi-
tal murder and sentenced to death in 1989.
This Court affirmed his conviction and sen-
tence on direct appeal[2] and denied habeas
relief in 2001.[3] On September 18, 2008,
the federal district court overturned his
death sentence, based on *Penry*–error and
a jury nullification instruction, and re-
turned relator to Dallas County for resen-
tencing.[4]

The Dallas County District Attorney's
Office has indicated its intent to once again
seek the death penalty. All parties agree
that relator is and has been indigent
throughout these proceedings; thus, he is
entitled to the appointment of counsel un-
der the provisions of Article 26.052.[5] Un-
der that statute, the trial judge "shall ap-
point two attorneys, at least one of whom
must be qualified under this chapter, to
represent an indigent defendant as soon as
practicable after charges are filed, unless
the state gives notice in writing that the
state will not seek the death penalty."[6]

The procedures set out in that statute
were not followed in this case because,
when relator was returned to Dallas Coun-
ty, attorney Danalynn Recer[7] took on the
role of *pro bono* lead counsel at relator's

---

1. See *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex.Crim.App.2011) (setting out two-part test for obtaining mandamus relief: (1) no ade-quate remedy at law; and (2) proof of a *"clear right to the relief sought—that is to say, when the facts and circumstances dictate but one rational decision under unequivocal, well-set-tled ..., and clearly controlling legal princi-ples.)."

2. *Garcia v. State*, 887 S.W.2d 846 (Tex.Crim. App.1994).

3. *Ex parte Garcia*, No. WR–45,875–01 (Tex. Crim.App. Feb. 28, 2001) (not designated for publication).

4. *Garcia v. Quarterman*, 3:01–CV–0580–G (N.D.Tex. Sept. 18, 2008) (not designated for publication).

5. Tex.Code Crim. Proc. art. 26.052(a).

6. *Id.* art. 26.052(e).

7. Ms. Recer is the Director of the nonprofit Gulf Region Advocacy Center (GRACE).

specific request.[8] For over a year, she litigated numerous pretrial motions and supervised the work of investigators on the case.

In December of 2009, Ms. Recer was diagnosed with breast cancer. She was uncertain whether, after her surgery, she would be able to return to work relatively quickly. One of the Board Members for Ms. Recer's nonprofit wrote the trial judge saying that Bobby Mims, an experienced attorney from Tyler,[9] was willing to take on the case as an appointed attorney, but that the scheduled trial date would have to be modified because he had not had an opportunity to familiarize himself with the case. Therefore, in January, 2010, the trial judge signed an order finding relator indigent and entitled to appointment of counsel.[10] He appointed Bobby Mims as lead counsel for relator and granted Ms. Recer's Motion to Withdraw, with the caveat that if Ms. Recer recovered from her cancer "her reinrollment into the case shall not be the basis for a continuance of the trial date set for January 2011."

The trial judge "waited for Mr. Mims to advise the Court of his choice for second chair counsel."[11] On July 21, 2010, Ms. Recer, having recovered from her cancer surgery, filed a "Notice of Re–Enrollment," notifying the trial judge that she would return to the case as lead counsel, "alongside appointed counsel Bobby Mims" who had been working alone on the case for some seven months. At that point, the trial judge sent Mr. Mims a letter stating

that, "[i]f Ms. Recer 're-enrolls' in the case as retained counsel the Court would no longer be obligated to pay for your time on the case[.]" On the other hand, if Mr. Mims remained as lead counsel, the trial judge would appoint a second attorney to assist him.

Relator objected. In an affidavit, he stated, *inter alia,*

> Ms. Recer recently found out that she is cancer-free and is now able to represent me again. I want Ms. Recer to return to her position as lead counsel in my case.
>
> I also have developed an attorney-client relationship with Bobby Mims. He has visited me several times and talked with me about issues in my case. I want him to continue to represent me along with Ms. Recer. When he was appointed, it was my understanding that Mr. Mims was appointed until my case was over.
>
> I have been on death row for over 20 years and am indigent. I cannot afford to pay for any part of my representation. I have never waived and do not waive any of my rights under state or federal law, including my right to counsel, my right to have my existing attorney-client relationships preserved, my right to privileged communications with counsel and other rights and protections.

The choice seems to have come down to either (1) Ms. Recer would represent rela-

---

**8.** Relator signed an affidavit stating that he wanted "Danalynn Recer, and those working with her, including Maurie Levin, to be my lawyers.... I do not want to talk to other lawyers or to any police or court officials about my case."

**9.** Mr. Mims is listed as an attorney qualified for appointment to death-penalty cases in the First Administrative Judicial Region. (Respondent's Exhibit C).

**10.** The Order Appointing Counsel states that it was signed on January 28, 2009, but this is certainly a clerical error as Mr. Mims was not appointed until January of 2010.

**11.** Respondent's Response to Motion for Leave to File Petition for Writ of Mandamus at 9.

tor alone on a *pro bono* basis,[12] or (2) the trial judge would appoint two attorneys under Article 26.052, and they would each be compensated. Both Ms. Recer and Mr. Mims joined relator and wished to remain on his case: one acting *pro bono* and one appointed. The trial judge then conducted several hearings during the second half of 2010 without making any decision on the matter. Finally, on April 8, 2011, the trial judge denied relator's request and ordered Mr. Mims removed from the case. Relator then filed this mandamus action. We requested further briefing on specific issues,[13] and the respondent trial judge responded, as did several amici curiae on behalf of relator.[14]

**12.** The trial judge states that other lawyers had also been assisting Ms. Recer on a *pro bono* basis. Relator denies that other attorneys are currently assisting him. He states that both Ms. Recer and Mr. Mims obtained the assistance of an attorney who is an expert in bitemark evidence solely for the purpose of a pre trial *Daubert* hearing, but that this attorney has never met or appeared on behalf of relator. In relator's response to our Order, Ms. Recer states the following:

No attorney other than undersigned counsel is currently representing Mr. Garcia in his resentencing trial. None of the students, fellows, law professors or consultants who have played small and temporary roles at various times over the long course of this case have ever offered or agreed to serve as trial counsel. None are willing to serve as trial counsel. None are funded to serve as trial counsel. None have the intention of serving as trial counsel.

[Response on] Application for Writ of Mandamus at 6.

**13.** Those questions were:
(1) The original "Notice of Enrollment" in this case indicated that Jordan Steiker, Maurie Levin, and Danalynn Recer were going to represent relator. Are Steiker and Levin still representing relator? If not, why and when did the representation cease?
(2) In a letter to the trial judge, it was indicated that Teresa Norris was to take over the *pro bono* representation of relator in addi-

## II.

In his response, the trial judge argues that relator himself effectively removed Mr. Mims as appointed lead counsel when Ms. Recer, his *pro bono* attorney, re-enrolled as lead counsel.[15] He argues that because relator re-enrolled Ms. Recer as lead counsel, he had neither statutory authority nor the obligation to appoint only second-chair counsel to assist the *pro bono* lead counsel. Moreover, the trial judge asserts that he would be interfering with relator's counsel of choice if he were to follow Article 26.052 with regard to the appointment of two attorneys since relator has designated Ms. Recer as lead counsel.[16] And, even if he could appoint only

tion to Bobby Mims. Did that happen? If not, then why?
(3) The order appointing Mims as counsel is not in the record before this Court. When did this appointment occur and was Mims appointed as lead counsel in Recer's absence?

**14.** The Dallas County District Attorney's Office, though invited to do so, did not respond.

**15.** The trial judge asserts that Ms. Recer, as *pro bono* counsel, is, for all purposes, equivalent to "retained" counsel in this case. The trial judge does not cite any authority for this proposition, but relator does not cite any authority to dispute this proposition. I think that this is an unsettled legal issue in this context and thus one of the reasons why mandamus relief in inappropriate. However, both relator and respondent might wish to refer to *State v. Jones,* 707 So.2d 975 (La. 1998), *Spaziano v. Seminole County,* 726 So.2d 772 (Fla.1999), and *People v. Howery,* 178 Ill.2d 1, 227 Ill.Dec. 354, 687 N.E.2d 836 (1997), for whatever light those out-of-state cases might shed on the present situation.

**16.** Whether the trial judge has an obligation under Article 26.052 to appoint second-chair counsel (and therefore keep Mr. Mims on the case as second chair, rather than lead counsel, because of his established attorney-client relationship) is a different question than that which is raised in relator's mandamus appli-

second-chair counsel, he is not obligated to do so because relator "has no less than six attorneys."[17] Finally, the trial judge concludes that mandamus is inappropriate because relator has not shown that the trial judge violated a clear ministerial duty.

A defendant, under most circumstances, has the right to retained counsel of his choice.[18] On the other hand, a defendant does not have the right to appointed counsel of his choice, but a judge may not arbitrarily remove his appointed counsel whom he has grown to accept and gained confidence in.[19] As we have previously held,

> [O]nce an attorney is serving under a valid appointment by the court, and an attorney-client relationship has been established, the court may not arbitrarily

remove the attorney over the objections of both the defendant and his counsel.[20]

In the present case, Mr. Mims worked as lead counsel with relator for close to seven months before Ms. Recer recovered and returned. Both Ms. Recer and Mr. Mims join relator in requesting that Ms. Recer remain as lead counsel and Mr. Mims remain as co-counsel.

The issue then, is whether the trial judge "arbitrarily" removed Mr. Mims as lead counsel when Ms. Recer returned. Did the trial judge have a ministerial duty—a "clear and unambiguous legal duty"—to not remove Mr. Mims? I agree that the law in this area is unsettled.

Part of the complication is that Article 26.052 states that the trial judge shall appoint two attorneys to an indigent defendant in a capital case in which the State

---

cation. Relator asks this Court to order the trial judge to vacate his order dismissing Mr. Mims as *lead* counsel. Vacating the order dismissing Mr. Mims as lead counsel would only create the quandary of having two lead counsel, and it would not answer the question of whether relator is entitled to second-chair counsel when a *pro bono* attorney is lead counsel.

One sensible way to cut through the Gordian Knot that has prevented this resentencing trial from proceeding for almost two years would be for the trial judge to reappoint Mr. Mims as second-chair counsel under the statute. This would both save Dallas County a considerable sum of money and ensure that relator is represented by the counsel of his choice. I do not suggest that the trial judge is legally required to do so, but such a solution would satisfy all of the parties and conserve considerable scarce financial resources for the taxpayers both at trial and if there is any appeal.

**17.** As noted above, relator asserts that none of the named attorneys—Maurie Levin, Jordan Steiker, Clive Stafford Smith, Natasha Merle, or Christopher Plourd—are assisting in the resentencing trial. This factual dispute is another reason why pretrial mandamus relief may be inappropriate.

**18.** *United States v. Gonzalez–Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (trial court's erroneous deprivation of defendant's Sixth Amendment right to counsel of choice entitled him to reversal of his conviction, as error was "structural" and not subject to review for harm); *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Bowen & Bowen v. Hon. Burt Carnes*, 343 S.W.3d 805, 816 (Tex.Crim. App.2011) (granting pretrial mandamus relief when trial judge disqualified defendants' retained counsel without a showing of "an actual conflict or a serious potential for conflict").

**19.** *See Bowen & Bowen*, 343 S.W.3d at 813; *Stearnes v. Clinton*, 780 S.W.2d 216, 225 (Tex. Crim.App.1989); *Buntion v. Harmon*, 827 S.W.2d 945, 949 (Tex.Crim.App.1992).

**20.** *Stearnes*, 780 S.W.2d at 221; *see also Buntion*, 827 S.W.2d at 949 ("Although an indigent defendant does not have the right to counsel of his own choosing, once counsel is appointed, the trial judge is obliged to respect the attorney-client relationship created through the appointment.... The attorney-client relationship between appointed counsel and an indigent defendant is no less inviolate than if counsel is retained.").

seeks the death penalty. Period. There are no exceptions,[21] such as when an indigent defendant has a *pro bono* attorney. The fact that an attorney has volunteered to represent a capital defendant on a *pro bono* basis does not mean that the defendant is not indigent and does not, at least on its face, obviate the applicability of Article 26.052.[22] But the statute does not address the present situation: If an indigent capital defendant has obtained the services of one *pro bono* counsel, is Article 26.052 satisfied? Because we have not previously addressed this question and because the answer is not so obvious as to be beyond all reasonable dispute, I agree that pretrial mandamus relief is inappropriate.

---

**21.** *See Coit v. State*, 808 S.W.2d 473, 475 (Tex.Crim.App.1991) ("Where the statute is clear and unambiguous the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.").

**22.** The Louisiana Supreme Court, in *State v. Jones*, 707 So.2d 975 (La.1998), addressed a similar issue concerning a capital-murder defendant with respect to appointment of counsel for an indigent whose father had retained one lawyer. Louisiana, unlike Texas, has no statute requiring two appointed attorneys for indigent capital defendants. *Id.* at 978. But the court noted that a state supreme-court rule provides "that a court shall appoint at least two attorneys to represent an indigent defendant in a capital case." Thus, the court stated that, while it may not be constitutionally or statutorily required, "[i]t is plainly preferable to have two attorneys in a capital case and we find no reason that the presence of collaterally retained private counsel should eliminate the need or countermand the advantages of two." *Id.* at 978. The court also stated that there was little rhyme or reason to

think that an indigent defendant is entitled to two appointed attorneys paid for by the state, but no appointed attorney if an attorney is willing to represent the defendant *pro bono* or with collateral funding. *Id.* As the court explained,

> Certainly, it is in the best interest of the taxpayer to encourage collaterally obtained counsel at no cost to the public fisc. It would therefore defy logic to punish such a defendant by refusing to appoint co-counsel because he has, in effect, saved [Indigent Defender Board] funds through retention of private counsel.

*Id.* However, the supreme court concluded that, in Louisiana, unlike in Texas, "an indigent capital defendant has no recognized right to two attorneys and in some cases may not desire a second appointed counsel." Thus, the trial judge has discretion in balancing various factors concerning appointment of second counsel. In the present case, the court stated that "the factors weigh heavily in favor of appointing second counsel," but because the trial judge in the *Jones* case had not yet exercised his discretion, the issue was not yet ripe for review. *Id.* at 978–79.