

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0071-14

**ROBERT BRADLEY EHRKE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TAYLOR COUNTY

**JOHNSON, J., delivered the opinion of the Court in which MEYERS, KEASLER, HERVEY, ALCALÁ, RICHARDSON, and NEWELL, JJ., joined. KELLER, P.J., and YEARY, J., concurred.**

## O P I N I O N

A jury convicted appellant of possession of more than one gram but less than four grams of methamphetamine in a drug-free zone and, because of two enhancement allegations and the drug-free-zone allegation, assessed a sentence of seventy-five years in prison.[1] Appellant appealed to the

---

[1] Under the Controlled Substances Act, a person commits a third-degree felony if the person knowingly or intentionally possesses more than one gram but less than four grams of a controlled substance listed in Penalty Group 1 (including methamphetamine). TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c); *id*. § 481.102(6). If a person commits this offense "in, on, or within 1,000 feet of the premises of . . . a playground . . .," the minimum confinement or imprisonment is increased by five years, and the maximum confinement is doubled. *Id*. § 481.134(b), (c). The area in which appellant was arrested in Stevenson Park is within 1,000 feet of a playground.

Eleventh Court of Appeals, contending that the trial court committed reversible error when it denied

his motion to make an independent examination of the alleged methamphetamine. The court of

appeals overruled this issue. *Ehrke v. State*, No. 11-11-00248-CR, 2013 Tex. App. LEXIS 12294,

at **10, 12 (Tex. App.–Eastland Sept. 30, 2013) (mem. op., not designated for publication). This

Court granted appellant's petition for discretionary review. We reverse and remand.

## I. Facts

Appellant was seen rummaging through a trash can. As the officer approached, he noticed

that, despite the cold January temperatures, appellant was wet. He was also restless and talkative,

had trouble standing, smelled of alcohol, and appeared to be under the influence of a drug.[2] The

officer determined that he had probable cause to arrest appellant for public intoxication and, once

his backup arrived, they attempted to restrain appellant. During the struggle, appellant discarded a

crumpled cigarette pack that he had clenched in his hand. The officers subdued appellant, retrieved

the cigarette pack, and found what appeared to be methamphetamine inside. The substance found

---

[2] [STATE]: Officer Collins, have you had any specific training to watch for people that were on methamphetamines?
[OFFICER]: Yes, I have.
[STATE]: And during that time you've been on the street, have you encountered other people that have been on methamphetamines?
[OFFICER]: Yes.
[STATE]: And approximately how many times have you encountered people that have been on methamphetamine?
[OFFICER]: Once a week working in that area.
[STATE]: And was part of your belief about the defendant–did that go into your development of what you believed was your ability and authority to arrest the Defendant?
[OFFICER]: Yes, I believe he showed signs and symptoms of being under the influence of drugs and alcohol.

. . .

[STATE]: Now, you were saying that you thought that–what were you saying about your belief as far as the Defendant and methamphetamines were concerned?
[OFFICER]: Okay. Methamphetamine also creates a reaction called hyperthermia, which it raises your body temperature to dangerous levels, and on the street they call it "burning up," and they'll do whatever they can to cool themselves down, in this instance maybe jumping into a creek at Stevenson Park. III RR 191-94.

in the cigarette pack was tested by the Texas Department of Public Safety (DPS) laboratory in Abilene. The laboratory manager, who was a fifteen-year employee of the laboratory, tested the substance and determined that the substance was 1.6 grams of methamphetamine.

On June 16, 2014, the trial court granted appellant's motion to adopt all motions and related orders filed in the previous cause number. Supp. CR 8. With this order, the court adopted appellant's earlier Motion to Inspect, Examine, and Test Physical Evidence, in which appellant requested that the 1.6 grams of the substance alleged to contain methamphetamine be tested to determine weight and composition. *Id*. at 52-53. The trial court denied the motion, finding that "the defendant has not shown a particularized need for independent scientific testing, or that the result of a scientific test would change based on who performed the test, or that an independent expert would be a significant factor at trial." *Id*. at 80. The court noted, however, that it was "required to allow defendant's counsel to inspect and examine any alleged controlled substance." *Id*.

On February 14, 2011, at a pretrial hearing, appellant's counsel again raised his motion to inspect and argued that the weight of 1.6 grams was close enough to .99 grams, the threshold for a lower punishment, to justify independent testing. II RR 22. The state argued that appellant was required to articulate a particularized need and that he had failed to do so. *Id*.[3] On July 21, 2011,

---

[3] "[DEFENSE COUNSEL]: Well, I'd like to have that examined as to weight and as to content of the alleged substance that's there. I think we have an independent–Southwestern Institute of Forensics is our understanding–we've used them before for the Defense, and the State had no problem with it. So we'd ask that we be allowed to do that.

. . .

[STATE]: Your Honor, I think they have to articulate a particularized need. I don't think it's an absolute right to have a secondary inspection. I think there's been some cases recently that came out and said that. And since there's nothing in the motion that shows a particularized need or anything that casts doubt on the lab that's been provided, that we would oppose that.

. . .

[DEFENSE COUNSEL]: Well, we just say that the State has the burden of proof beyond a reasonable doubt, and

appellant's counsel stated on the record that the court had overruled the motion to inspect, asked once again that the trial court reconsider the motion, and offered to pay the cost himself or have appellant's family pay. Supp. RR 12-13. Before trial began on August 1, 2011, appellant's counsel stated on the record that his motion to reconsider was denied. III RR 6.

At trial, a DPS chemist testified that, to identify the substance, he first did a color test. IV RR 64. After the color test, he used infrared spectroscopy to confirm the original finding. *Id.* To determine the weight of the substance, he weighed a small plastic bag, then weighed the small plastic bag with the substance in it, then subtracted the weight of the small plastic bag from the total weight. *Id.* His final determinations were that the substance weighed 1.6 grams and contained methamphetamine. Supp. CR 54.

## II. Court of Appeals's Decision

The court of appeals held that the trial court did not err when it denied appellant's "request to appoint an expert to make an independent examination of the substance discovered in the cigarette pack." *Ehrke v. State*, 2013 Tex. App. LEXIS 12294, at **10, 12.[4] An indigent defendant has a right to a state-provided expert witness only when the defendant has "made a preliminary threshold showing with facts or evidence that the expert's testimony will likely be a significant factor in his defense or the State's prosecution." *Id.* at *11. Because appellant did not provide information showing a particularized need for appointment of a chemist or how an independent chemist would

---

looking at the amount of weight, the closeness to what the weight and–right now there's nothing before the Court of what has been done as far as testing, so we'd request it." II RR 21-22.

[4] While the court of appeals's holding is correct with regard to the appointment of an expert to retest the substance, it did not address the first issue of whether appellant had the right to "inspect" the substance without "a preliminary threshold showing with facts or evidence that the expert's testimony will likely be a significant factor in his defense or the State's prosecution." *Ehrke v. State*, No. 11-11-00248-CR, 2013 Tex. App. LEXIS 12294, at **10-12 (Tex. App.–Eastland, Sept. 30, 2013) (mem. op., not designated for publication).

arrive at a materially different result, the trial court did not abuse its discretion by refusing to appoint a chemist. *Id.* at \*12.

### III. Grounds for Review

We granted one of appellant's grounds for review. That ground asserts that the court of appeals erred in finding that the trial court did not abuse its discretion in denying appellant's motion to inspect the alleged methamphetamine.[5] That ground comprises two issues:

(1) whether a defendant charged with possession of a controlled substance has a right to inspection of the controlled substance by an independent expert and,

(2) whether the state is required to pay for an indigent defendant's inspection of the controlled substance by an independent expert.

We hold that, while the trial court is required to permit a defendant in a controlled-substance case to have an independent expert analyze the controlled substance, the trial court is not required to appoint such an expert for an indigent defendant, absent a preliminary showing of a significant issue of fact.

### IV. Analysis

Sub-issue I—Right to Independent Testing

Under the applicable 2009 version of Texas Code of Criminal Procedure Article 39.14(a), "[u]pon motion of the defendant showing good cause therefor and upon notice to the other parties . . . the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection . . . [of] evidence material to

---

[5] As worded in appellant's *pro se* petition, the issue is whether "[t]he court of appeals erred in finding that trial court did not abuse [its] discretion in denying petitioner's motion for independent chemical analysis of the contraband which was the lynchpin of the state's case. Thereby denying petitioner of his constitutional rights to both a fair trial and effective assistance of counsel."

any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies." The burden is on the defendant to show good cause before a court must issue an order for production and inspection. *Massey v. State*, 933 S.W.2d 141, 153 (Tex. Crim. App. 1996). However, if the evidence sought is "material to the Defense of the accused," the trial court is required to permit inspection. *Quinones v. State*, 592 S.W.2d 933, 941 (Tex. Crim. App. 1980). Evidence is material if its omission would create "a reasonable doubt that did not otherwise exist . . .." *United States v. Agurs*, 427 U.S. 97, 112 (1976). The right to inspect the alleged controlled substance is absolute–it requires no further showing beyond an initial timely request.[6]

This Court's decisions addressing this issue make it clear that, if a defendant in a controlled-substance case asks to inspect the alleged controlled substance, the court must permit inspection, even without a showing of good cause, because the substance is material to the defense of the accused. *See McBride v. State*, 838 S.W.2d 248, 251 (Tex. Crim. App. 1992) (defendant charged with possession of cocaine had right to independent inspection of cocaine); *Terrell v. State*, 521 S.W.2d 618, 619 (Tex. Crim. App. 1975) (trial court's failure to grant defendant's motion for discovery seeking independent chemical analysis of alleged controlled substance was reversible error); *Detmering v. State*, 481 S.W.2d 863, 864 (Tex. Crim. App. 1972) (trial court reversibly erred by not permitting defendant in LSD-possession case to perform a chemical analysis of the LSD). Evidence is indispensable when its "exclusion from evidence would [] affect the essential proof that appellant committed an offense." *Quinones*, 592 S.W.2d at 943. The *McBride* court reasoned that the evidence of the drug itself is indispensable to the state; excluding the controlled substance would

---

[6] *See* TEX. CODE CRIM. PROC. art. 28.01, § 2 ("When a criminal case is set for such pre-trial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the court for good cause shown; provided that the defendant shall have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters.").

affect the essential proof that a defendant possessed a controlled substance—it is "necessarily material to the defense of the accused." 838 S.W.2d at 251. Therefore, in a case that alleges possession of a controlled substance, a trial court must permit inspection of the alleged controlled substance, and a trial court that fails to do so has committed reversible error. *Id.*

McBride was found unconscious with cocaine in his pocket, and he asserted that the person who had beaten and robbed him left the cocaine to avoid prosecution for the robbery. *Id.* at 251 n.7. He argued that, if a chemical analysis showed a low concentration of cocaine, it would support his defensive theory that he did not have the requisite *mens rea* for possession because the cocaine was planted. *Id.*[7] The broad language in *McBride* also suggests that the right was intended to be absolute, with no further inquiry into good cause. *See id.* at 251 ("Based on these holdings, we find that a criminal defendant has a right to inspect evidence indispensable to the State's case because that evidence is necessarily material to the defense of the accused.").[8]

Finally, the only cases that rely on Article 39.14(a) and uphold a trial court's denial of a timely motion to inspect a controlled substance involve situations in which either the original testing of the substance used up the entire sample or the request was not timely. *See, e.g., Bell v. State*, 866 S.W.2d 284, 288 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (appellant was not entitled to inspect cocaine because it was consumed during analysis by police laboratory); *Scott v. State*, 825 S.W.2d

---

[7] Other cases that upheld a defendant's right to an independent inspection of the controlled substance made no further inquiry into the defendant's need after the initial request was made. *Mendoza v. State*, 583 S.W.2d 396, 398 (Tex. Crim. App. 1979); *Detmering*, 481 S.W.2d at 864; *Terrell*, 521 S.W.2d at 619.

[8] The current version of Article 39.14 (effective January 1, 2014) removes the requirement that a defendant show good cause. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 ("Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this code, as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of . . . evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.").

521, 523-25 (Tex. App.—Dallas 1992, pet. ref'd) (trial court did not abuse its discretion by refusing to grant defendant's motion to inspect because defendant filed his motion only a few minutes before the pre-trial hearing). Once a defendant in a controlled-substance case makes a timely request to inspect the controlled substance, the defendant is entitled to have the substance inspected by his or her own chemist. *Mendoza v. State*, 583 S.W.2d 396, 398 (Tex. Crim. App. 1979). But does "inspect" include "analyze"? That question was addressed in *Detmering*.

> We are met at the outset with the question of whether the trial court erred in overruling the Appellant's motion to "examine and inspect all drugs or potions which are designated by the penal statute as dangerous drugs and which the State of Texas intends to introduce into evidence in this case and which is now in the possession of the District Attorney."[9] This motion was filed approximately two (2) months prior to the trial date. The trial court responded to such motion in part as follows:

> > "It is further specifically ordered that a visual examination only is being ordered by this Court."

> Apparently the trial court gave a literal interpretation to the word "inspection" found in Article 39.14, V.A.C.C.P.

> In his Special Commentary on Article 36.14, V.A.C.C.P., our present Presiding Judge [Onion] said that, "If it is known that the State is planning to base its case on a fingerprint, bullet, pistol or rifle, book or record, the defendant can have his own expert examine the same under the safeguards provided." Although Judge Onion did not discuss drugs and although the Legislature did not name drugs as one of the items which could be "examined" under the discovery statute, it is clear that such is a proper interpretation of the statute. *See also* Willson's Criminal Forms, 7th Edition, Section 2530. Therefore, we interpret the word "inspection" to mean more than a visual examination of an object. Where the item on which the State bases its case is, for example, a drug, a visual examination would not always divulge anything of probative value.

> It follows that the trial court reversibly erred when he later denied the Appellant's motion to "specifically instruct the District Attorney that inspection of such drugs shall include the right of the defendant to perform a chemical analysis on each variety

---

[9] The internal footnote states, "The question presented in this case does not involve a motion by an accused for the chemical analysis of drugs made by the prosecutor's chemist, *see Feehery v. State*, Tex. Crim. App., 480 S.W.2d 649 (1972) [sic], which this Court has held to be the work product of the State."

of drugs which the State intends to introduce into evidence in this case, said analysis is to be made by a qualified chemist in Dallas County, Texas, in whatever laboratory it is designated by the District Attorney and in the presence of whatever witness the District Attorney desires."

For the reasons stated, the judgment is reversed and the cause remanded.

*Detmering*, 481 S.W.2d at 864.[10]

In the present case, appellant timely filed a motion to inspect, examine, and test physical evidence and requested that the state produce the substance alleged to be 1.6 grams of methamphetamine and submit it to a specific forensic institute for testing. In both the motion and the pretrial hearing on the motion, appellant requested that the substance be tested both as to weight and composition. The trial court noted that it was "required to allow defendant's counsel to inspect and examine any alleged controlled substance."[11] But the trial court also denied the motion,

---

[10] Article 36.14 has been amended multiple times, but not until 2013 do we have information on the meaning of "inspection" that was intended by the legislature. Sen. Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 1611, 83rd Leg., R.S. (2013). Much of the language in the enacted version of the bill refers to written documents and recorded statements, with physical evidence being lumped into "items." The "Section by Section Analysis," states,

> Sec. 1. DISCLOSURE BY THE STATE. (a) Requires the attorney representing the state, subject to the restrictions provided by Article 39.15 (Discovery of Evidence Depicting or Describing Abuse of or Sexual Conduct by Child or Minor), beginning no later than 30 days after the initial appearance of the defendant, to disclose to the defendant's counsel and permit inspection, photocopying, and photographing of the following material and information in possession, custody, or control of all law enforcement agencies, investigatory agencies, and prosecutors' offices, any other governmental entity, or any non-governmental entity contracting for work with any government entity involved in the investigation of the crimes alleged or in the prosecution of the defendant,
>
> . . .
>
> (7) any physical or documentary evidence related to the case charged that was obtained from or that belongs to the defendant or that the attorney representing the state intends to use against the defendant in the case charged and, on a showing of materiality by the defendant, the opportunity to test that evidence; . . ..

Another section of the enacted bill authorizes a court to "order the defendant to pay costs related to discovery under this article . . .." Art. 39.14(l).

[11] The trial court in *Detmering* responded in a similar fashion: "It is further specifically ordered that a visual examination only is being ordered by this Court." 481 S.W.2d at 864.

explaining that "the defendant has not shown a particularized need for independent scientific testing, or that the result of a scientific test would change based on who performed the test, or that an independent expert would be a significant factor at trial." Supp. CR 80. This is not the appropriate standard; the standard here is the materiality of the evidence.

Appellant's counsel later asked the court to reconsider its denial of the motion,[12] stating that he understood the state would not pay but that either he or appellant's family would pay for the testing.[13] Shortly before the trial began, appellant's counsel stated on the record that the court had denied the motion.

The trial court too narrowly interpreted the meaning of "inspection" under Article 39.14(a). While the trial court acknowledged that it was required to allow appellant's counsel to look at the methamphetamine, it did not allow appellant to have the methamphetamine analyzed by an independent chemist. *See Detmering*, 481 S.W.2d at 864 (explaining how a trial court erred by restricting "inspection" in Article 39.14(a) to "visual examination"). The right to pay for an independent chemist to analyze the controlled substance in a controlled-substance case is absolute. *McBride*, 838 S.W.2d at 251. The trial court erred in holding that appellant was required to meet a minimum threshold showing in order to be permitted to have an independent expert analyze the alleged methamphetamine, thereby refusing to permit appellant's counsel to obtain an independent

---

[12] The fact that appellant's counsel needed to bring up the motion again and offer to pay for the testing suggests that, when the court noted that it must permit appellant's counsel to inspect the methamphetamine, it did not mean that appellant's counsel was authorized to have the methamphetamine tested by another chemist.

[13] The state argued, with regard to appellant's counsel paying for the independent testing, that appellant is "either indigent or he's not. I mean, we can't have hybrid indigency, have him paying for part of his defense and not the other, and I don't understand how [appellant's counsel] can say, I can pay for that but I'm still going to be court-appointed and bill the County." Supp. RR 13. This argument is without merit because appellant would not be paying for the testing; either his attorney or his family would pay. *See Garcia v. White*, 357 S.W.3d 373, 377 (Tex. Crim. App. 2011) (Cochran, J., concurring) ("The fact that an attorney has volunteered to represent a capital defendant on *a pro bono* basis does not mean that the defendant is not indigent . . ..") (Cochran, J., concurring).

analysis of the methamphetamine.  We sustain appellant's ground of review as to sub-issue I.

Sub-issue II—Indigent Defendant's Right<br>To a Court-appointed Expert for Chemical Analysis

Because we have established the right to have an independent analysis of the drug in a controlled-substance case, the issue becomes whether the trial court denied appellant due process and effective assistance of counsel by refusing to appoint an independent chemist to retest the weight and composition of the substance.[14]  The Supreme Court has recognized that an indigent defendant has a constitutional right to a court-appointed expert in some circumstances.  *See, e.g., Ake v. Oklahoma*, 470 U.S. 68, 74-77 (1985) (balancing the private interest affected by state's action, the governmental interest affected if the safeguard is provided, the probable value of the safeguard, and the risk of "erroneous deprivation" if the safeguard is not provided).  This Court has extended *Ake* to an indigent defendant's access to a chemist for chemical analysis of the alleged drug in a controlled-substance case.  *McBride*, 838 S.W.2d at 252 ("[W]hen the case is reasonably certain to proceed to trial, the trial judge should, upon request, permit inspection of the substance alleged in the indictment.").[15]  Under *Ake*, for meaningful access to justice, a defendant must have "access to the raw materials integral to the building of an effective defense."  470 U.S. at 77.

While the appointment of an expert may be required in some circumstances, the state does

---

[14]  After the first denial of the motion to inspect, appellant's attorney offered either to pay for the analysis himself or have appellant's family pay for the analysis.  Supp. RR 12-13.

[15]  In *McBride*, it was clear that the request was for appointment of an investigator.  838 S.W.2d at 250 (using a "Motion for the Appointment of an Investigator/Chemist").  In the case at bar, it is unclear whether the original motion requested that the state appoint an investigator or simply requested permission to hire an investigator. Supp. CR 52 (using a "Motion to Inspect, Examine, and Test Physical Evidence").  However, while not explicitly requesting the state pay for testing, the motion likely qualified as an *Ake* motion because of the references to the right to effective assistance of counsel and due process.  The order denying the motion supports this interpretation, because it refers to the "significant factor at trial" analysis that is relevant to whether a court is required to appoint an expert.

not need to "purchase for the indigent defendant all the assistance that his wealthier counterpart might buy . . .." *Id.* The burden is on the defendant to provide concrete reasons for why the expert should be appointed. *Ex parte Jimenez*, 364 S.W.3d 866, 877-78 (Tex. Crim. App. 2012). In both *Ake* and *McBride*, "the defendant made a preliminary showing of a significant issue of fact on which the State would present expert testimony, and which the knowledge of a lay jury would not be expected to encompass." *Jackson v. State*, 992 S.W.2d 469, 474 (Tex. Crim. App. 1999). "In cases holding that a sufficient showing was not made under *Ake*, the defendant typically has failed to support his motion with affidavits or other evidence in support of his defensive theory, an explanation as to what his defensive theory was and why expert assistance would be helpful in establishing that theory, or a showing that there was a reason to question the State's expert and proof." *Rey v. State*, 897 S.W.2d 333, 341 (Tex. Crim. App. 1995). While the language in *McBride* is expansive, the *McBride* court did acknowledge that "to hold that an indigent defendant has an absolute right to inspect the substance alleged in the indictment, in all cases, could unduly tax the financial resources of the County." 838 S.W.2d at 252.[16] This holding assumes that the cost of the second analysis will fall on the state. Our cases hold that, while a defendant has an absolute right to inspect the alleged controlled substance, a defendant does not have an absolute right to a state-appointed expert.

Here, appellant's motion failed to make a preliminary showing of a significant issue of fact–it provided no concrete reasoning for why appellant needed an independent chemical analysis of the methamphetamine. *Cf. Rey*, 897 S.W.2d at 340-41 (appellant sought expert in pathology to develop

---

[16] As examples of when the right would not apply, the court lists cases that were dismissed by the state or no-billed by the grand jury. *McBride*, 838 S.W.2d at 252. By using the language "for example," this Court did not appear to intend the list to be exhaustive.

his theory that he could not have foreseen that his actions would result in death of the deceased, which conflicted with opinion of pathologist who conducted the autopsy). In the pretrial hearing on the motion, appellant requested an inspection in order to verify both that the substance was actually methamphetamine and that the weight was 1.6 grams; if the weight were less than 1.0 grams, the punishment range would be significantly lower. II RR 21-22.[17] In asserting that the weight might be over 40% less than that the DPS chemist measured, appellant did not set forth any reason to doubt the analysis by the original chemist[18] or that the substance was methamphetamine, nor did he explain how an expert was needed to prepare for his defense.[19] *See Taylor v. State*, 939 S.W.2d 148, 152 (Tex. Crim. App. 1996) ("If appellant demonstrated the complexity of the issues involved and the importance of the requested expert testimony vis-a-vis a viable defense, then he would have been entitled to a DNA expert."). Appellant failed to make a preliminary showing of a material issue sufficient to require the court to appoint an independent expert to verify the weight and composition

---

[17] In appellant's counsel's words, "We just say that the State has the burden of proof beyond a reasonable doubt, and looking at the amount of weight, the closeness to what the weight and–right now there's nothing before the Court of what has been done as far as testing, so we'd request it." II RR 22.

[18] As explained by *Ake,* a trial court's disinterested expert does not fulfill the role of a psychiatrist as to an indigent defendant. *See De Freece v. State*, 848 S.W.2d 150, 159 (Tex. Crim. App. 1993) (under *Ake*, an expert is appointed to "provide technical assistance to the accused, to help evaluate the strength of his defense, to offer his own expert diagnosis at trial if it is favorable to that defense, and to identify the weaknesses in the State's case, if any, by testifying himself and/or preparing counsel to cross-examine opposing experts."). But, if a disinterested expert shows that a defense expert will not be a significant factor in the case, *Ake* may never be triggered. *Id*. at 159.

[19] In a recent Third Court of Appeals case, the court considered an indigent defendant's request for an expert to develop a defense regarding the legitimacy of drug dogs in a possession of marijuana case. *Rivers v. State*, No. 03-11-00536-CR, 2013 Tex. App. LEXIS 4918, at *1 (Tex. App.–Austin, April 19, 2013, no pet.) (mem. op., not designated for publication). The court, in holding the defendant had no right to such expert, considered that defendant did not provide any information with regard to the nature of the expert's field or the complexity of the issue. *Id*. at *12-13. The defendant "did not explain or present evidence with regard to the nature of drug-dog training and field performance or with regard to the difficulty of interpreting drug-dog alerts" so the trial court "could not evaluate the probable value of expert assistance on the issue." *Id*. at *13.

of the alleged controlled substance.[20]

Appellant also failed to present any information with regard to "how important the scientific issue is in the case, and how much help a defense expert could have given." *Rey*, 897 S.W.2d at 338 (explaining that both psychiatrists and pathologists rely on the science of medicine, which "eludes mathematic precision"). "The nature of an expert's field and the importance and complexity of the issue will bear directly upon whether the appointment of an expert will be helpful." *Id.*; *see also Taylor*, 939 S.W.2d at 152. Appellant has presented no evidence that the tests were improperly performed or that the evidence indicated that the expert's results had been questioned. *See, e.g., Ex parte Coty*, 418 S.W.3d 597, 602 (Tex. Crim. App. 2014) (considering applicant's writ of habeas corpus alleging that "due to Salvador's misconduct and the fact that the evidence was in the sole custody of Salvador for a period of time, he was entitled to relief.").[21]

Creating an absolute right for the defendant to state-funded independent chemical analysis in all controlled-substance cases would unduly burden the state–there must be some preliminary showing of a significant issue of fact to require the court to appoint an expert. The trial court did not abuse its discretion in denying appellant's motion as it was related to appointment of an independent expert. We overrule appellant's ground as to sub-issue II.

### V. Conclusion

We hold that the trial court properly refused to appoint an expert to examine the substance

---

[20] In *Quinones*, this Court described the right to a court-appointed independent expert to evaluate the drugs in a drug possession case as absolute. 592 S.W.2d at 942. The Court cited to *Terrell* and *Detmering* to support this assertion, but neither *Terrell* nor *Detmering* dealt with indigent defendants seeking appointment of an expert. Both cases dealt with the right to inspect the substance in a controlled-substance case, not the right of an indigent defendant to have a court-appointed expert re-analyze the substance.

[21] Before he was suspended for misconduct, Jonathan Salvador was a laboratory technician at Houston's Crime Lab who had worked on nearly 5,000 cases during his employment. *Ex parte Coty*, 418 S.W.3d at 598.

at issue, but that it abused its discretion in denying both inspection and testing at appellant's expense. The judgment of the court of appeals is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.


Delivered:  April 22, 2015
Publish