**Opinion issued June 21, 2016**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-14-00848-CR

———————————

**NOMATHEMBA Y. SITAWISHA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1870305**

---

## O P I N I O N

A jury convicted Nomathemba Y. Sitawisha of driving while intoxicated with an alcohol concentration level of more than 0.15. *See* TEX. PENAL CODE § 49.04(d). The jury assessed punishment at 105 days of imprisonment in county jail and a $2,500 fine. Sitawisha appealed, and in her sole issue she asserts

that the trial court erred by failing to advise her about her right to obtain expert assistance at the State's expense.

There is no constitutional requirement that, as part of the standard warnings about the risks of refusing a court-appointed lawyer, a trial court must specifically advise a criminal defendant about the right to request expert assistance at the State's expense. Accordingly, we affirm the judgment of conviction.

**Background**

Officer J. Taylor was conducting a traffic stop when a woman in a minivan pulled up next to him. The minivan driver reported that someone driving a red car had jumped a curb and nearly caused a vehicle collision before hitting a pole. She also stated that the red car was parked nearby. After finishing the traffic stop, Officer Taylor traveled to the parking lot identified by the minivan driver. The only vehicle there was a red car with a shattered front windshield and two flat tires. As Officer Taylor arrived, he was joined by Deputy J. Ogletree, who was responding to a 911 call about the incident.

Nomathemba Sitawisha was sitting in the driver's seat when Officer Taylor and Deputy Ogletree approached. Both law-enforcement officers testified that when Sitawisha exited the vehicle they smelled a distinct odor of alcohol emanating from her. They also testified that Sitawisha was belligerent and unsteady on her feet. She refused to perform field sobriety tests.

Sitawisha was arrested. After she refused to consent to blood and breath tests, the police conducted a blood draw pursuant to a warrant. The blood sample was taken at least two hours after her arrest. Laboratory analysis of the sample revealed that Sitawisha's blood-alcohol concentration was 0.21 grams of alcohol per 100 milliliters of blood, which is over the legal limit of 0.08 grams.

Sitawisha was indigent, yet she waived her Sixth Amendment right to appointed counsel and elected to proceed without the assistance of a lawyer. The trial court conducted a hearing to ensure that her waiver was knowing and voluntary. During the hearing, the following exchange occurred:

Court: . . . [Y]ou have a high school education with some college and you understand the implications and the dangers of being self-represented.

Sitawisha: Yes.

Court: Okay. And you understand that this is a driving while intoxicated case, a Class A, and the penalties could range from being—if found guilty, could range from probation to a dollar fine up to a year in jail and a $4,000 fine. Do you understand?

Sitawisha: Yes.

Court: Okay. And you understand that there's technical rules of evidence and procedures, which you're going to be obligated to comply to. Do you understand that?

Sitawisha: Yes.

Court: Okay. And that you're not given any special consideration because of your lack of legal training or legal experience. Do you understand that, too?

3

Sitawisha:    Yes.

Sitawisha also signed a waiver of counsel containing similar admonishments in written form. During this initial hearing, the trial court did not advise her that she could ask the court to appoint a state-funded expert if she made a suitable preliminary showing that one was reasonably necessary to prepare an adequate defense on a significant fact issue.

During the trial, the forensic toxicologist who analyzed the blood sample testified about his methods and procedures. On cross-examination, Sitawisha attempted to suggest the possibility of fermentation in the sample and other potential problems with the sample's storage. The toxicologist responded that scientific questions about sample storage would be more appropriately directed to the expert reviewer, Dr. Fessessework Guale. Sitawisha continued to ask questions outside of the toxicologist's expertise, then eventually she asked the toxicologist whether Dr. Guale would have more information that would be pertinent. The State objected, and outside the presence of the jury, the court told Sitawisha, "If you wanted to bring your own expert in, you could've done that."

The next day, Sitawisha called Dr. Guale as a witness. Sitawisha asked several questions on direct examination about the sample preservation process and its potential effect on blood-alcohol concentration. Dr. Guale responded that the preservative used for blood samples was generally effective, fermentation usually

4

occurred only in postmortem cases, and elapsed time in storage generally would lower blood-alcohol concentration rather than raising it.

The jury found Sitawisha guilty of driving while intoxicated. In a special issue, the jury found that her blood-alcohol concentration was above 0.15 at the time of analysis. This resulted in Sitawisha being convicted of a Class A misdemeanor rather than a Class B misdemeanor. TEX. PENAL CODE § 49.04(d). The jury assessed punishment at a fine of $2,500 and confinement for 105 days in jail. Sitawisha appealed.

## Analysis

In her sole issue, Sitawisha argues that she should have been advised about her right to call an expert at the State's expense. She asserts, and the State does not contest, that because the special issue led to her being convicted of a greater offense, her blood-alcohol concentration was an element of the offense that was material to the case. She claims that she attempted to create a fact issue about the blood sample, but she was unable to do so because she did not retain an expert and she did not know she could obtain the funds for one. Sitawisha argues that this is a structural issue that rendered her trial fundamentally unfair in violation of the federal Constitution. She asserts that forgoing the right to funds for an expert requires admonishments and a knowing waiver equivalent to the procedure applicable when waiving the right to counsel.

5

The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The assistance of counsel is a fundamental right that protects the defendant's right to a fair trial and ensures that the prosecution's case is subjected to adversarial testing. *See Faretta v. California*, 422 U.S. 806, 832–833, 95 S. Ct. 2525, 2540 (1975); *Gideon v. Wainwright*, 372 U.S. 335, 340, 83 S. Ct. 792, 794 (1963); *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008). An indigent defendant is entitled to appointed counsel unless she knowingly, intelligently, and voluntarily waives the right to counsel. *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541.

The Sixth Amendment also includes a reciprocal right to self-representation. *Id.* at 821, 95 S. Ct. at 2534. If the defendant chooses to waive the right to counsel and assert the right to self-representation, the trial judge must admonish the defendant about "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S. Ct. at 2541 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 242 (1942)). In these admonishments, the trial judge must inform the defendant "that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because

6

he asserted his pro se rights." *Williams*, 252 S.W.3d at 356 (quoting *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988)).

While a State need not "purchase for the indigent defendant all the assistance that his wealthier counterpart might buy," the defendant may be entitled to the "basic tools of an adequate defense or appeal" when such assistance is needed for him "to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Ake v. Oklahoma*, 470 U.S. 68, 76–77, 105 S. Ct. 1087, 1092–93 (1985). The United States Supreme Court therefore has held that due process may require that the State provide access to expert assistance if the subject of the expert testimony is "likely to be a significant factor" at trial. *Id.* at 74, 105 S. Ct. at 1091–92.

However, "a defendant does not have an absolute right to a state-appointed expert." *Ehrke v. State*, 459 S.W.3d 606, 616 (Tex. Crim. App. 2015). Instead, "there must be some preliminary showing of a significant issue of fact to require the court to appoint an expert." *Id.* at 617. Only after "the defendant makes a sufficient threshold showing of the need for expert assistance on a particular issue" is the defendant entitled to expert assistance. *Ex parte Jimenez*, 364 S.W.3d 866, 877 (Tex. Crim. App. 2012). This showing must be more than "undeveloped assertions that the requested assistance would be beneficial." *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1, 105 S. Ct. 2633, 2637 n.1 (1985). Typically,

when there is an insufficient showing to invoke the right to expert assistance under *Ake v. Oklahoma*, 970 U.S. 68, 105 S. Ct. 1087 (1985), the defendant has "failed to support his motion with affidavits or other evidence in support of his defensive theory, an explanation as to what his defensive theory was and why expert assistance would be helpful in establishing that theory, or a showing that there was a reason to question" the State's evidence. *Rey v. State*, 897 S.W.2d 333, 341 (Tex. Crim. App. 1995).

Sitawisha argues that specific advice about the right to expert assistance should be required because it is a structural necessity for a fair trial. She compares the right to expert assistance to the right to counsel and argues that this right must be similarly explained and knowingly waived by the defendant.

However, Sitawisha's argument is not supported by either *Ake* or *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975), the two authorities upon which she primarily relies. *Faretta* requires only that an accused be warned of the "dangers and disadvantages of self-representation" so that the choice to forego the assistance of counsel is knowing and voluntary. *Faretta* requires a general warning about "technical rules of evidence and procedure" that will apply even despite the absence of an attorney, but it does not require more detailed admonitions about specific procedures, including the method for invoking the right to expert

assistance at the State's expense, or when that right might arise. *See* 422 U.S. at 835, 95 S. Ct. at 2541.

*Ake* allows for the possibility of expert assistance when necessary. 470 U.S. at 76–77, 105 S. Ct. at 1092–93. However, it is incumbent on the defendant to make a preliminary showing that expert assistance is necessary to ensure the appropriate adversarial process for a significant issue of fact. *See Ehrke*, 49 S.W.3d at 617. The *Ake* "right" arises only upon a valid request for assistance, and it similarly imposes no requirement that a trial court advise a self-represented defendant about the possibility of assistance. *See id.*; *Ake*, 470 U.S. at 82–83, 105 S. Ct. at 1096 (noting that "the risk of error from denial of [expert] assistance, as well as its probative value, is most predictably at its height" when the issue is "seriously in question").

Sitawisha relies upon a decision of the Supreme Court of Connecticut for the proposition that an indigent defendant who has waived the right to counsel is constitutionally entitled to necessary expert services at public expense. In *Connecticut v. Wang*, 92 A.3d 220 (Conn. 2014), the Court held that a pro se defendant could access ancillary tools of defense such as expert assistance through standby counsel without forgoing his right to self-representation.[*] *Id.* at 254–56.

---

[*]    *Wang* is also factually distinguishable from this case because the defendant explicitly requested that the trial court order expert funding. *Wang*, 92 A.3d at 224–28. The defendant also provided extensive documentation of an

However, that case does not purport to impose any requirement that a court affirmatively advise the defendant as to her ability to request expert assistance.

The standard admonishments required in connection with a defendant's waiver of the right to counsel provide general warnings about the dangers of self-representation. *See Williams*, 252 S.W.3d at 356. These include the admonishment that "there are technical rules of evidence and procedure," and that the pro se defendant "will not be granted any special consideration solely because he asserted his pro se rights." *Id.* The risk that a self-represented defendant will fail to take advantage of her right to expert assistance by failing to make a timely request accompanied by the necessary preliminary showing is thus one of the dangers of self-representation. *See Faretta*, 422 U.S at 835, 95 S. Ct. at 2541.

Sitawisha was informed of this general risk yet she still waived her right to counsel, and she does not contest that knowing and voluntary waiver on appeal. To require the trial court to advise Sitawisha separately about her potential ability to request expert assistance would be to insist upon a "special consideration" for her simply because she asserted her right to self-representation. *Williams*, 252 S.W.3d at 356. We conclude that Sitawisha was adequately warned she would receive no such special consideration, and thus there was no structural error or fundamental

---

alleged history of mental illness and noted the possibility of raising a defense based on mental disease or defect. *Id.* at 229–30. Sitawisha made no similar preliminary showing or request in this case.

10

unfairness that affected her substantial rights in this case. *See* TEX. R. APP. P. 44.2; *Aguirre-Mata v. State*, 992 S.W.2d 495, 498–99 (Tex. Crim. App. 1999).

Sitawisha did not move to appoint an expert at any point in her trial. Instead, she called Dr. Guale as a witness in the apparent hope that the doctor would validate her concerns about the integrity of the blood sample. She did not make any showing to the court to demonstrate her need for an expert or to show that there was reason to question the State's evidence. *Cf. Rey*, 897 S.W.2d at 341 (stating general requirements of sufficient showing for *Ake*). As such, we need not reach the question of whether Sitawisha would have been entitled to expert assistance had she requested it, because she did not make a timely request or motion that would preserve error. *See* TEX. R. APP. P. 33.1; *Ehrke*, 459 S.W.3d at 617.

We conclude that the trial court was not required to advise Sitawisha separately about the potential availability of expert assistance at the State's expense. *See Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541; *Williams*, 252 S.W.3d at 356. Because Sitawisha did not make any preliminary showing of a significant issue of fact or motion for the appointment of an expert at the trial level, she has not preserved any further error for this appeal. *See* TEX. R. APP. P. 33.1; *Ehrke*, 459 S.W.3d at 617. We overrule Sitawisha's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

Publish.  TEX. R. APP. P. 47.2(b).