**Opinion issued May 7, 2020.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00301-CR

————————————

**KHANCHANAT PHANKHAO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1498433**

## MEMORANDUM OPINION

Khanchanat Phankhao was convicted of aggravated sexual assault of a child and sentenced to confinement for life. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i). In two issues, Phankhao contends that (1) there is legally insufficient evidence to

support his conviction and (2) the trial court abused its discretion in allowing him to waive his right to counsel and represent himself pro se at trial.

We affirm.

## Factual Background

This is a sexual assault case in which the defendant, Khanchanat Phankhao, was convicted for having sexual intercourse with his friend's minor daughter. The following facts are undisputed.

### *Phankhao becomes friends with Jane's family*

In 2011, Lamoune Douangdara moved from Laos to the United States with her twin boys and her daughter, the complainant, Jane[1]. They eventually settled in Houston, Texas, where Douangdara began working at an electronics manufacturing plant. There, she met Phankhao, another immigrant from Southeast Asia, and the two became friends.

Over the years, Phankhao would often come over to Douangdara's house to visit her and her children. When Phankhao would visit, Jane always seemed very happy to see him, and she eventually began to act like she was in love with him. At some point, Phankhao and Jane began talking at night over the phone. Their conversations would often last for hours.

---

[1] To protect her privacy and for ease of reading, we refer to the complainant by the pseudonym Jane.

***Jane admits to her mother that Phankhao had sex with her***

One night in 2015, Douangdara discovered that Jane, then 13 years old, had sneaked out of the house. Douangdara stayed up so that she could confront Jane when she returned. Early that following morning, Douangdara observed Phankhao dropping off Jane at a stop sign near their house. When Jane entered the house, Douangdara asked her where she had been, and Jane stated that she had gone for a walk. But upon further questioning, Jane admitted that she had been with Phankhao and that they had had sex.

***A sexual assault examination, forensic interview, and analysis of semen recovered from Jane's body corroborate Jane's outcry***

Douangdara called the police, who instructed her to take Jane to Texas Children's Hospital for a sexual assault examination. At the hospital, Jane was examined by sexual assault nurse examiner A. Diaz. During the examination, Diaz questioned Jane about the incident, and Jane admitted that she had sexual intercourse with Phankhao. Diaz found Jane to be credible. Diaz then collected vaginal and anal swabs from Jane, which were submitted to the Harris County Institute of Forensic Sciences for DNA analysis.

After her sexual assault examination, Jane was taken to the Children's Assessment Center, where she spoke with forensic interviewer A. Diop. Jane told Diop that she was in a relationship with Phankhao and that the two had sexual intercourse the night she sneaked out. Like Diaz, Diop found Jane to be credible.

Meanwhile, Harris County Sheriff's Office Investigator J. Craig obtained and executed a search warrant for a sample of Phankhao's saliva to compare with the DNA collected from the swabs of Jane. The analysis detected semen on the vaginal and anal swabs obtained from Jane. The DNA profile from the semen was then compared to the DNA profile from the swabs of Phankhao. Phankhao could not be excluded as a possible source of the DNA on the vaginal and anal swabs. Based on the FBI's 2015 Amended Population Database, the profile obtained from the vaginal and anal swabs is expected to occur in approximately 1 in 350 sextillion Caucasians, 1 in 376 sextillion African Americans, and 1 in 142 sextillion Hispanics. The profile is expected to occur in other ethnicities with similar frequency.

Phankhao was later interviewed by A. Vera, an investigator with the Harris County Sheriff's Office. Phankhao initially denied knowing Jane's name, but he eventually acknowledged that he was a friend of Douangdara and described his relationship with Jane as that of a father-figure. Phankhao denied having intercourse or other sexual contact with Jane. He stated that his DNA should not be on her clothing.

## Procedural History

***Phankhao is indicted and appointed counsel, but then requests that he be permitted to represent himself pro se***

Phankhao was indicted for aggravated sexual assault of a child under 14 years of age. *See id.* Spencer Graham was appointed as his attorney. Shortly after the appointment, Phankhao filed a motion to substitute Wilvin Carter as his attorney, which the trial court granted. Shortly after that, Carter filed a motion to withdraw. The trial court granted Carter's motion and appointed public defender Jane Vara as Phankhao's attorney. At some point, Phankhao informed Vara that he wanted to represent himself pro se, and Vara scheduled a *Faretta* hearing.[2]

***After two hearings, the trial judge permits Phankhao to waive his right to counsel and proceed pro se***

At the first hearing, the trial judge asked Phankhao why he wanted to represent himself pro se. Phankhao responded that he knew "a little bit more about what happened" than his attorney. The trial judge then explained to Phankhao that if he represented himself, he would not be allowed to "just get up and just talk about what happened." Instead, the trial judge explained, he would have to follow the rules of evidence and procedure.

The trial judge asked Phankhao whether he had any prior experience representing himself in court, and Phankhao responded that he did not. The trial

---

[2]    Named after the seminal Supreme Court opinion issued in *Faretta v. California*, 422 U.S. 806 (1975).

judge asked Phankhao whether he understood the charges filed against him, and Phankhao responded that he did not. The trial judge asked Phankhao whether he knew the range of punishment, and Phankhao replied that he did, but then gave an incorrect range, stating that it was 25 to 99 years, when it was actually 5 to 99 years or life. *See id.* § 12.32(a). The trial judge asked Phankhao what was the purpose of voir dire and the opening statement. Phankhao responded that the purpose of voir dire was "to show evidence to the jury [and] let them know what can be presented and what cannot be presented" and that the purpose of an opening statement was to "show cause." The trial judge then asked Phankhao's attorney whether there were any "communication problems" between her and Phankhao. Phankhao's attorney replied that there was "no language barrier . . . at all" but that Phankhao emailed her "a lot" and only came to her office "some."

At the end of the hearing, the trial judge denied Phankhao's motion. But Phankhao continued to request that he be permitted to represent himself pro se. At the trial judge's request, Vara and the State filed briefs on the issue. The briefs emphasized that (1) Phankhao had a constitutional right to represent himself pro se, (2) Phankhao's lack of legal acumen was not a proper ground for denying his request, and (3) a violation of his right to self-representaiton would be a structural error not subject to harm analysis. Vara then scheduled a second *Faretta* hearing.

6

The trial judge began the second hearing by inquiring into Phankhao's background, age, experience, and education. Phankhao testified that he was 40 years old and currently unemployed but had previously worked as an electrical engineer and realtor. Phankhao further testified that he had an associate's degree in electrical engineering and a real estate license. Finally, Phankhao testified that he had no prior legal experience and no legal background.

The trial judge then admonished Phankhao of the dangers and disadvantages of self-representation. The trial judge told Phankhao that if he represented himself pro se and was found guilty, he would "suffer the consequences," including a prison sentence of up to 99 years and a fine of up to $10,000. *See id.* § 12.32. The trial judge explained that Phankhao would not be "allowed to get up and ramble and talk and tell [his] side of the story[,]" which, the trial judge noted, seemed to be what Phankhao wanted to do. Instead, the trial judge explained, Phankhao would "be held to the same standard" as an attorney and would therefore have to follow the rules of evidence and procedure. The trial judge emphasized that Phankhao's attorney knew these rules and would thus be able to properly present evidence and respond to objections on Phankhao's behalf. The trial judge said that she could not think of any advantage to Phankhao representing himself pro se, save perhaps not incurring attorney's fees.

The trial judge then asked Phankhao whether he understood that if he represented himself pro se, he would be waiving his right to have an attorney present his defense in compliance with the rules of evidence and procedure. Phankhao responded that he did. The trial judge then asked Phankhao whether he still wanted to waive his right to counsel and represent himself pro se. Phankhao responded that he did.

At the end of the second hearing, the trial judge granted Phankhao's motion. Vara withdrew as Phankhao's attorney, and Phankhao proceeded to represent himself pro se.

### *Phankhao is tried and convicted*

When the case went to trial, the State presented testimony from Douangdara, Diaz, Craig, Diop, and Vera. The State also presented testimony from Dustin Foley, the analyst who prepared the report comparing the DNA profile from semen found on Jane to the DNA profile from the cheek swabs obtained from Phankhao. Phankhao did not present any witnesses or evidence of his own. Jane did not testify.

The jury found Phankhao guilty and assessed his punishment at confinement for life. The trial judge entered judgment in accordance with the jury's verdict. Phankhao was appointed appellate counsel, and he appealed.

## Legal Sufficiency

We begin with Phankhao's second issue, in which he contends that there is legally insufficient evidence to support his conviction for aggravated sexual assault. We address the legal-sufficiency issue first because, if sustained, it would result in an acquittal, whereas Phankhao's first issue, involving his waiver of the right to counsel, would, if sustained, result in a new trial.

### A.    Applicable law and standard of review

Under the Penal Code, a defendant commits aggravated sexual assault if he intentionally or knowingly causes the sexual organ of a child under 14 years of age to contact the sexual organ of the defendant. *See id.* § 22.021(a)(1)(B)(iii), (2)(b). We must review the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found beyond a reasonable doubt that Phankhao caused Jane's sexual organ to contact his sexual organ while Jane was younger than 14 years of age. *Fernandez v. State*, 479 S.W.3d 835, 837–38 (Tex. Crim. App. 2016). If a rational factfinder could have so found, we will not disturb the verdict on appeal. *Id.* at 838.

### B.    Analysis

At trial, the State presented testimony from: (1) Jane's mother, who testified that Jane admitted to her that she had sexual intercourse with Phankhao when she was 13 years old; (2) the sexual assault nurse examiner who examined Jane, who

9

testified that Jane admitted to her that she had sexual intercourse with Phankhao and that she found Jane to be credible; (3) the forensic interviewer who interviewed Jane, who likewise testified that Jane admitted to her that she had sexual intercourse with Phankhao and that she found Jane to be credible; and (4) Foley, the DNA analyst, who authenticated the report prepared by the Harris County Institute of Forensic Sciences and summarized and explained the report's findings and conclusions from the analysis and comparison of the swabs taken from Jane and Phankhao.

In summarizing the report's findings, Foley testified that semen was found on the vaginal and anal swabs obtained from Jane. Foley further testified that the DNA profile obtained from the sperm fraction of the vaginal and anal swabs were consistent with a single-source male and that Phankhao could not be excluded as a possible source. Foley testified that the profile obtained from the vaginal and anal swabs is expected to occur in approximately 1 in 350 sextillion Caucasians, 1 in 376 sextillion African Americans, and 1 in 142 sextillion Hispanics. Foley explained that the profile is expected to occur in other ethnicities with similar frequency.

Phankhao did not present any witnesses or testimony of his own, and he did not elicit any rebuttal testimony on cross-examination. The State's evidence was thus uncontested. Phankhao nevertheless argues that the evidence is legally

10

insufficient to support his conviction because the testimony of the State's witnesses was not credible. We disagree. It is well-established that "the credibility of a witness is an issue for the jury to decide." *Solomon v. State*, 49 S.W.3d 356, 362 (Tex. Crim. App. 2001); *see Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (reviewing court is "required to defer to the jury's credibility and weight determinations"). And the jury found the witnesses credible.

The testimony, moreover, was corroborated by the semen recovered from Jane's anus and vagina and the results of the DNA analysis, which indicated the semen came from Phankhao.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Phankhao caused Jane's sexual organ to contact his sexual organ while Jane was younger than 14 years of age.

We overrule Phankhao's second issue.

### Waiver of Right to Counsel

In his first issue, Phankhao contends that the trial court abused its discretion in allowing him to waive his right to counsel and exercise his right to self-representation. Phankhao argues that his waiver was not knowingly and intelligently made because the trial court failed to properly admonish him of the dangers and disadvantages of self-representation.

11

## A.    Applicable law and standard of review

In all criminal prosecutions, the defendant has the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CODE CRIM. PROC. art. 1.051(a). The defendant likewise has the reciprocal right to self-representation. TEX. CODE CRIM. PROC. art. 1.051(f); *Faretta v. California*, 422 U.S. 806, 821 (1975). The right to self-representation extends to all criminal prosecutions, even prosecutions for capital murder in which the State seeks the death penalty. *See Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999).

To exercise the right to self-representation, the defendant must waive the right to assistance of counsel. *Johnson v. State*, 760 S.W.2d 277, 280 (Tex. Crim. App. 1988) (Onion, J., concurring in part and dissenting in part) ("In the wake of *Faretta* it has been the new unanimous view that the assertion by an accused of his right to self-representation is dependent, in part, upon a waiver of his right to counsel."); *see also Hathorn v. State*, 848 S.W.2d 101, 123 (Tex. Crim. App. 1992) ("[A]n accused's right to proceed pro se does not attach until he clearly and unequivocally asserts it.").

To be constitutionally effective, the waiver must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *Moore*, 999 S.W.2d at 396; *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). If the defendant satisfies these three elements, the trial court must allow the defendant to waive his

right to counsel and proceed pro se, *see Hathorn*, 848 S.W.2d at 123, even if the defendant lacks an understanding of the law and is not otherwise qualified to represent himself, *see Godinez v. Moran*, 509 U.S. 389, 400 (1993) ("[T]he defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel."); *Blankenship v. State*, 673 S.W.2d 578, 584 (Tex. Crim. App. 1984) (holding that defendant's failure to answer trial court's legal questions correctly did not constitute proper ground for denying defendant's request to waive counsel).

The issue here concerns the second element of the waiver test—whether Phankhao's waiver was knowingly and intelligently made. "The decision to waive counsel and proceed *pro se* is made 'knowingly and intelligently' if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation." *Moore*, 999 S.W.2d at 396 n.5. To ensure a defendant's waiver is knowing and intelligent, the trial judge must question and admonish the defendant about his request. *Blankenship*, 673 S.W.2d at 583.

In questioning the defendant, the trial judge need not follow a particular formula or script but should generally inquire into the defendant's background, age, experience, and education, unless these factors are otherwise apparent from the record. *See Johnson*, 760 S.W.2d at 278–79.

13

In admonishing the defendant, the trial judge must generally warn the defendant "that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights." *Sitawisha v. State*, 496 S.W.3d 826, 831 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008)). However, the trial judge has no duty to provide "more detailed admonitions about specific procedures," such as "the method for invoking the right to expert assistance at the State's expense, or when that right might arise." *Sitawisha*, 496 S.W.3d at 831. Nor must the trial judge advise the defendant of "possible defenses or mitigating circumstances before the right can be exercised." *Fletcher v. State*, 474 S.W.3d 389, 399 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

We review the trial judge's ruling that the defendant's waiver was knowingly and intelligently made for an abuse of discretion. *See Rodriguez v. State*, 491 S.W.3d 18, 28 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

## B. Analysis

At the second hearing, the trial judge inquired into Phankhao's background, age, experience, and education. Phankhao testified that he was 40 years old and currently unemployed but that he had previously worked as an electrical engineer

14

and a realtor. He further testified that had an associate's degree in electrical engineering and a real estate license but no legal education or experience.

The trial judge then admonished Phankhao about the dangers and disadvantages of self-representation. The trial judge told Phankhao that if he represented himself pro se and was found guilty, he would "suffer the consequences," including a prison sentence of up to 99 years and a fine of up to $10,000.[3] The trial judge explained that Phankhao would not be "allowed to get up and ramble and talk and tell [his] side of the story[,]" which, the trial judge noted, seemed to be what Phankhao wanted to do. Instead, the trial judge explained, Phankhao would "be held to the same standard" as an attorney and would thus be required to comply with the rules of evidence and procedure. The trial judge emphasized that Phankhao's attorney knew these rules and would thus be able to properly present evidence and respond to objections on Phankhao's behalf. The trial judge said that she could not think of any advantage to Phankhao representing himself pro se, save perhaps not incurring attorney's fees.

The trial judge then asked Phankhao whether he understood that if he represented himself pro se, he would be waiving his right to have an attorney

---

[3] We note that the applicable punishment range was five to 99 years' confinement *or* confinement for life. *See* TEX. PENAL CODE § 12.32(a). While the trial judge failed to inform Phankhao that he faced the possibility of confinement for life if convicted, we do not believe that affected the sufficiency of her admonishments.

present his defense in compliance with the rules of evidence and procedure. Phankhao responded that he did. The trial judge then asked Phankhao whether he still wanted to waive his right to counsel and represent himself pro se. Phankhao responded that he did.

These admonishments satisfy the requirement that the trial judge generally warn the defendant that "there are technical rules of evidence and procedure" and he "will not be granted any special consideration solely because he asserted his pro se rights." *Sitawisha*, 496 S.W.3d at 831 (quoting *Williams*, 252 S.W.3d at 356). Phankhao nevertheless argues that his waiver was not knowingly and intelligently made because the trial judge failed to provide several "critical admonishments," including "those covering the specific charge he faced as well as the possible mitigating circumstances and defenses."

The record reflects that the trial judge did not advise Phankhao of the charges against him at the second hearing. Phankhao argues that this is significant because he had stated at the first hearing that he did not understand the pending charges. For this reason, Phankhao contends that the trial judge had a duty to confirm he understood the charges against him before permitting him to waive his right to counsel. Because the trial judge failed to do so, Phankhao argues that his waiver was not knowing and intelligent. We disagree.

16

Although the trial judge failed to confirm that Phankhao understood the charges against him at the second hearing, the record nevertheless reflects that Phankhao was informed of and represented he understood the charges on numerous other occasions, including at (1) his initial appearance, (2) a hearing on the State's motion to revoke bond, and (3) his arraignment. Given Phankhao's statements at the first hearing, it would have been prudent for the trial judge to have verified Phankhao understood the pending charges at the second hearing. But, in light of the record as a whole, the trial judge was not required to do so before finding Phankhao's waiver knowing and intelligent and permitting him to waive his right to counsel.

We further disagree with Phankhao's contention that the trial judge had a duty to inform him of possible defenses and mitigating circumstances. Phankhao has not pointed us to any possible defenses or mitigating circumstances of which the trial judge failed to advise him. The caselaw makes clear that "no formulaic questioning" or "script" is required to establish a knowing and intelligent waiver. *Blankenship*, 673 S.W.2d at 583. And neither opinion cited by Phankhao in support of his contention—the Court of Criminal Appeals' opinion in *Blankenship*, 673 S.W.2d at 583–84, and the United States Supreme Court's plurality opinion in *Von Moltke v. Gillies*, 332 U.S. 708, 724–25 (1948)—actually held that the trial judge's admonitions were inadequate due to the judge's failure to inform the defendant of

17

possible defenses and mitigating circumstances. Rather, *Blankenship* held that the trial judge had erred by forcing counsel on a defendant on the ground that he lacked understanding of the law and was not qualified to represent himself. 673 S.W.2d at 584. *Von Moltke* involved an unrepresented German defendant who pleaded guilty to espionage after routine questioning by the trial judge and without being advised at all of the consequences of her plea (including a possible death sentence). 332 U.S. at 709–10. In addition, the defendant in *Von Moltke* did not assert a right to self-representation. *Faretta* does not require a trial judge to inform a defendant of possible defenses or mitigating circumstances before that right can be exercised.

Phankhao argues that the trial judge should have provided more detailed admonitions in this particular case due to the gravity of the offense. We disagree. The Court of Criminal Appeals has held that similar admonitions were adequate in cases where the defendant was charged with a first-degree felony, including capital murder. *Collier*, 959 S.W.2d at 626 (holding that defendant in prosecution for capital murder knowingly and intelligently waived right to counsel when trial judge (1) explained to defendant that there were technical rules of evidence and procedure that applied at trial, that he would not be granted any special consideration with respect to these rules, and that as a result he might be disadvantaged both at trial and in any appeal that might follow, (2) explained

charges against defendant and possible range of punishment, and (3) tried repeatedly to impress upon defendant extreme gravity of his request to proceed pro se and likelihood that it was a serious mistake).

Phankhao analogizes this case to *Buster v. State*, in which the court of appeals held that the trial judge failed to sufficiently admonish the defendant before allowing him to waive his right to counsel and represent himself pro se. 144 S.W.3d 71, 77–78 (Tex. App.—Tyler 2004, no pet.). In *Buster*, the record did not show whether the defendant had been arraigned or advised of the nature of the charges against him and the statutory offenses included within those charges. The trial judge did not advise the defendant of the range of allowable punishments. Nor did the trial judge specifically admonish the defendant that he would not be granted any relief from the technicalities of the rules of evidence and procedure. 144 S.W.3d at 77–78. Thus, the record wholly failed to show that the defendant had been properly admonished before waiving his right to counsel. That simply isn't the case here. The record affirmatively shows that Phankhao was arraigned and informed of the charges against him. And, as discussed, the record affirmatively shows that the trial judge's admonitions satisfied the requirement that Phankhao be generally warned that there are technical rules of evidence and procedure and that he will not be granted any special consideration because he asserted his pro se rights. *Sitawisha*, 496 S.W.3d at 831.

We hold that the record supports the trial judge's finding that Phankhao's waiver was knowing and intelligent and that Phankhao has therefore failed to show the trial judge abused her discretion in allowing him to waive his right to counsel and exercise his right to self-representation.

We overrule Phankhao's first issue.

## Conclusion

We affirm.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Goodman.

Do not publish. TEX. R. APP. P. 47.2(b).